Beasley v. Linehan Transfer Co.

---

BEASLEY v. LINEHAN TRANSFER COMPANY, Appellant.

Division One, March 7, 1899.

1. **Negligence**: ACCIDENT: UNFORESEEN. An accident which an experienced man in that business could not with ordinary care have foreseen or guarded against, is a hazard incident to the business which every man engaged in it assumes for himself.

2. ————: LOADING CARS ONTO STEAMBOAT: STRAIGHT LINE FOR TRACKS. The defendant was engaged in transferring cars across the Mississippi river, and plaintiff's husband, the steamboat's engineer, was killed by a car that broke loose two hundred yards or more above the boat, and dashing down the incline track ran into the boilers of the boat

and caused them to explode. The jury were instructed that, if they believed that the proper position of the track on the boat was in a straight line with that on the incline, and it had not such alignment, and that that was the cause of the accident, the defendant·was liable. *Held*, that the instruction was erroneous, as the law required only· such a position of the tracks as was necessary to a reasonably safe receiving of the cars.

3. ———: SUIT AGAINST WRONG PARTY.   Where plaintiff's own evidence shows that the blame for her husband's death rests on a railroad company, and not on defendant, the cause ought not to be submitted to the jury.

*Appeal from Cape Girardeau Circuit Court.*—HON. HENRY C. RILEY, Judge.

REVERSED.

SENECA N. TAYLOR, CHAS. ERD and SENECA C. TAYLOR for appellant.

(1)   Judgment should be reversed because the evidence conclusively shows, without contradiction, that the proximate cause of the death of plaintiff's husband was occasioned by the negligence of the railway company; that no negligent act of this defendant was the proximate cause of his death. The law is firmly settled that where the act of negligence complained of as causing the injury is at most but the remote occasion of the injury, and that a subsequent act of negligence, by a responsible person intervening, was the immediate and proximate cause of the injury, there can be no recovery. Keown v. Railroad, 141 Mo. 86; Thompson v. Railroad, 140 Mo. 138; Stanley v. Railroad, 114 Mo. 606; Burger v. Railroad, 112 Mo. 245; Hudson v. Railroad, 101 Mo. 14; Steep v. Railroad, 85 Mo. 229; Powell v. Railroad, ·76 Mo. 80; Henry v. Railroad, 76 Mo. 293; Stillson v. Railroad, 67 Mo. 671; Walsh v. Transportation Co., 52 Mo. 434; Reed v. Railroad, 50 Mo. App. 505; Railroad v. Kellog, 94 U. S.

469.  (2)  Instruction number 1 directed the jury to render a verdict in favor of plaintiff for $5,000 if they believed that the proper position of the transfer boat to occupy when receiving cars was such that the track on the boat should be in line with the track on the incline, so as to form a straight track; but that, at the time of the accident, the boat had not been put by defendant in proper position, but had been carelessly and negligently so placed that the track on the boat was not in line with the track on the incline, but formed an. angle thereto; and, that this was the cause of the accident to the boilers and the scalding of Beasley.  Thus, all the defenses pleaded and abundantly proven were absolutely ignored.  Where there is any evidence tending to support a defense, the *ignoring of it in the instructions given, is palpable error.*  Berger v. Railroad, 112 Mo. 239; Spillane v. Railroad, 111 Mo. 555; Wolff v. Campbell, 110 Mo. 114; Frank v. St. Louis, 110 Mo. 516; Alcorn v. Railroad, 108 Mo. 81; Gutridge v. Railroad, 105 Mo. 520; Roddy v. Railroad, 104 Mo. 234; Schroeder v. Mitchell, 98 Mo. 43; Rear v. Parker, 85 Mo. 107.  (3)  Where the risk is perfectly obvious to the sense of any man, whether servant or master, the servant assumes the risk.  Keighan v. Cavanaugh, 62 Mo. 230; Aldridge v. Furnace Co., 78 Mo. 559; Renfro v. Railroad, 86 Mo. 302; Roddy v. Railroad, 104 Mo. 234; Jackson v. Railroad, 104 Mo. 448; Alcorn v. Railroad, 108 Mo. 81; Fugler v. Bothe, 117 Mo. 475; Lucy v. Oil Co., 129 Mo. 32; Nugent v. Kauffman Milling Co., 131 Mo. 241; Holloran v. Union Iron Foundry, 133 Mo. 470; Winkler v. Basket & Box Co., 137 Mo. 394; Thompson v. Railroad, 140 Mo. 138.

WILSON CRAMER for respondent.

(1)  The proximate cause of Beasley's death was the displacement of the boilers and the consequent breaking of certain pipes which allowed steam and hot water to escape

and scald him to death. (2) There can be no doubt that, if the boat had been placed with its track in direct line with the incline track, the car, with the momentum attained by the time it reached the boat, would have gone through from stem to stern, even if derailed, without striking the boilers, which were twenty-five or thirty feet from the bow and twenty-two feet long. (3) It was the duty of the pilot, who was also captain, to see that the boat was in proper position to receive cars. (4) Beasley, the engineer, had the right to rely upon the captain, and to assume that the boat was in proper position when he received the signal from the pilot-house to come ahead on his engine. Shearman & Redfield on Neg. (3 Ed.) sec. 31. (5) By instruction number 1, given on behalf of plaintiff, the court submitted to the jury the questions whether the boat was in proper position to receive cars, and, if not, whether the failure to so place it was the cause of the accident to the boilers. (6) But one affirmative defense is set up in the answer, the one contained in the third count, to the effect that Beasley was notified that the car had broken loose and was coming down the incline with great velocity and momentum, in ample time to escape all injury, and knew the danger, but gave it no heed and so was guilty of contributory negligence. There was no evidence even tending to support this plea. (7) There is no allegation in the answer attributing the death of Beasley to any act or omission of the railway company. (8) Nor, if pleaded and shown, would the negligence of the railway company have constituted a defense to this action. Defendant, being itself at fault, can not set up the negligence of the railway company to defeat plaintiff's recovery. Shearman and Redfield on Neg., sec. 31; Becke v. Railroad, 102 Mo. 544; Dickson v. Railroad, 104 Mo. 504; Clark v. Railroad, 127 Mo. 213; Benjamin v. Railroad, 133 Mo. 274; Taylor v. Railroad, 137 Mo. 369. (9) The objections urged by appellants that instruction number 1, on behalf of plaintiff,

ignores the plea of contributory negligence, set up in the third count of the answer, is not well taken. This plea was a matter of affirmative defense, which defendant should have asked the court to submit to the jury by an instruction. Having failed to do so, it can not now complain. In the absence of a request, the court is not required to instruct in civil cases. Railroad v. Town Site Co., 103 Mo. 468; Coleman v. Drane, 116 Mo. 394; Nolan v. Johns, 126 Mo. 166.

VALLIANT, J.—This is a suit for damages for the death of plaintiff's husband, which she alleges was caused by defendant's negligence. Petition states substantially that defendant was a corporation owning a steamboat, and engaged in transferring freight cars for the St. Louis, Cape Girardeau & Fort Smith Railroad Company, across the Mississippi, from Cape Girardeau to a point opposite on the Illinois shore; that plaintiff's husband was in the employ of defendant as engineer of the steamboat, and on October 20, 1892, was at his post when a car which was being delivered by the railroad company to the boat to be transferred, broke loose from the train, ran with great force on the boat, struck the boilers, caused them to explode and he was scalded to death; that the mode of delivering cars on the boat from the railroad, was over an inclined track, down a steep grade to the water's edge, where, by means of a movable track called a cradle, connection was made with a track laid on the deck of the boat from bow to stern; that over this route the custom was to back the cars in trains of two, three or four each; that those railroad tracks were out of repair and in such bad condition that the coupling pins which linked the cars in train were liable to be worked out of place, and the cars to become disconnected and run down the track, "wild and uncontrolled, with great force and momentum," upon the boat, and to produce a catastrophe like that above described;

VOL. 148 mo—27

that the liability to danger which this condition of the railroad track caused, could have been obviated by placing guards of heavy timbers and great thickness alongside the track on the boat to catch the wheels of the cars that might run uncontrolled upon it; that such guards were practicable and usual on such boats, and could have been furnished at reasonable expense, and the liability to the danger might also have been reduced by means of a proper adjustment of the boat in the river with shore lines and guys, whereby the track on the boat could be held in perfect line with those on the incline and cradle, so that when cars should break loose from the train and "coming down wild and uncontrolled upon the boat would pass through from stem to stern and overboard without running against the boilers and steam pipes," and that it was practicable to do so, but defendant neglected those precautions and placed the boat so that the track on its deck was not in a straight line with the track on the railroad incline and cradle, and on the fatal day above named "a freight car was dropped down said inclined railway track, wild and uncontrolled, towards and upon said boat with great force and violence," and leaped from the track, crashed through the wood work, ran against the boilers, caused the explosion and the consequent scalding and death of plaintiff's husband.

The answer of defendant was first a general denial, then a plea that the railroad, the incline and the cradle were the property of the St. Louis, Cape Girardeau and Fort Smith Railroad Company, and under its exclusive control; that the boat could take no other position than it did on account of the piling in the river, which was also the construction of the railroad company; that defendant knew nothing of the condition of the tracks of the railroad and had nothing to do with the handling of the cars on those tracks; the answer also pleaded contributory negligence of plaintiff's husband.

The plaintiff's evidence tended to prove the statements

in her petition except those relating to the feasibility of guards of heavy timbers, etc., and stays of shore lines and guys. On those points the plaintiff's learned counsel did not see fit to ask an instruction for the reason stated on page 5 of his brief, resting his case entirely on this proposition, in his own language: "That if the boat had been in a straight line with the incline track, the car, in obedience to the laws of gravity, would have gone through the boat from stem to stern, even if derailed, and that the accident to the boilers would not have occurred."

The plaintiff in her petition does not aver, and her proof does not tend to show that the boat was not in position to safely receive, without injury to any one, cars from the railroad company if delivered in the manner in which such business was usually done. In fact the plaintiff's own testimony showed that although the boat's tracks were not exactly in line with those of the railroad, yet they were sufficiently so to safely receive cars delivered in the usual way and at the usual speed,three miles an hour,and that it was habitually done both before and since the accident; also that the bringing of the cars down the incline and delivering them on the boat was the work of the railroad company; that the boat was in good condition and well manned; that it was usual for the railroad company to have brakemen on the trains when coming down the incline, one of them on the hind car; that on this occasion there was no brakeman on the hind car which was the one that broke loose; that if a brakeman had been on it even after it broke loose, he could have checked its speed so as to have prevented the accident; that the car that broke loose was coupled to the next car ahead by uniting what was called a Jenny coupler with a common coupler, which did not make a perfect fit and the pin was liable to work out; this car was loaded with green oak lumber, weighed sixty thousand pounds, broke loose about two hundred or two hundred and fifty yards up the incline and obtained a velocity of fifty to sixty miles an hour by the time it reached the boat.

The plaintiff's proposition is that the defendant was guilty of negligence in not foreseeing and guarding against a catastrophe which by her own showing was the result of a bad roadbed and careless management of its train on the part of the servants of the railroad company.

The petition says it was an event liable to occur, and points out the manner in which it could have been guarded against, that is, by heavy timbers along the track on the deck, and shore lines and guys; but plaintiff's evidence failed to show that such precautions were either usual or practicable; and that position was abandoned by the plaintiff's counsel when he came to the point of shaping the issues for the jury by the instructions which he asked and which the court gave.

The jury were instructed in effect that if they believed that the proper position of the track on the boat was in a straight line with that on the incline, and it was not so, and that was the cause of the accident, the defendant was liable.

As a matter of fact no one would pretend to say that a perfectly straight line for the tracks was not a proper position, but if a perfectly straight line was not necessary to a reasonably safe receiving of the cars on the boat in the manner in which they were usually delivered, then it was error to instruct the jury to hold the defendant liable if they believed that if the tracks had been on a perfect line this wild car with a momentum acquired by its bulk and weight of sixty thousand pounds, rushing down a steep incline at a rate of fifty or sixty miles an hour, would probably have shot through the boat and into the river, without doing the particular injury it did occasion.

If the catastrophe in question was one so liable to occur that a reasonably prudent and experienced man in the business in which the defendant was engaged would have anticipated and could have guarded against it but failed to do so,

the defendant would be liable. But the plaintiff makes no such case, either by her pleading or proof. She says in her petition that it was "liable" to occur. An event is liable if its occurrence is within the range of possibility. But the law does not hold the master bound to guard against such an event.

Webster distinguishes the shades of meaning between the word "liable" and its synonym "subject." He says: "Liable denotes something external which may befall us; subject refers to evils which arise chiefly from internal necessity and are likely to do so. Hence the former applies more to what is accidental, the latter to things from which we often or inevitably suffer."

The only proof that this event was liable to occur was that it did occur this one time. Therefore the most the evidence tended to show was that it was an event within the range of possibility.

The defendant in this case owed the plaintiff's husband the duty of providing conditions in which the work of receiving and transferring cars on its boat could be conducted with reasonable safety to him, the character of the business considered, when done in the usual manner. An accident which an experienced man in that business could not with ordinary care have seen or guarded against, is a hazard incident to the business which every man engaged in it assumes for himself. This is a proposition of law so familiar that it would be out of place to cite authorities in support of it.

The plaintiff's own testimony shows that the blame for this accident was on the railroad company alone.

There was nothing either in the plaintiff's pleading or proof that justified the submission of this cause to the jury.

The judgment of the circuit court is reversed. All concur, except Marshall, J., absent.