Paul C. Wilson, Judge
In both cases before this Court, an employee brought a common law negligence claim against co-employees for an injury sustained on the job. In each case, the trial court granted summary judgment in the co-employees' favor. On appeal, this Court affirms because the plaintiffs failed to allege the co-employees breached a duty separate and distinct from an employer's duty to provide a reasonably safe workplace, i.e., a breach of a duty unrelated to employment or a breach of the employer's duty to provide a safe workplace that was not reasonably foreseeable to the employer.
Background
Conner
In 2007, Michael Conner was injured after touching a live power line he thought had been de-energized. On the day of the accident, Conner, a journeyman lineman, was working near an old shoe factory to retire a transformer bank for his employer, Intercounty Electric Cooperative Association ("Intercounty"). Conner was joined by four co-employees, including Dale Ogletree and Scott Kidwell. Ogletree, a supervisor, was responsible for enforcing Intercounty's safety manual, rules, and guidelines as the crew worked. Intercounty's safety manual meticulously explains how to safely de-energize a power line. Those instructions were not followed on the day of the accident.
Before Conner arrived, Kidwell (a serviceman) used an improper tool to de-energize the power line and did not properly confirm the line had been de-energized. He and the rest of the crew mistakenly believed he had successfully de-energized the line and began working next to it. Conner later arrived at the work site. Seeing the rest of the crew working next to the line, Connor assumed it had been de-energized. Out of caution, Conner asked Ogletree whether the line had been de-energized. Even though Ogletree had not properly confirmed the line was de-energized, Ogletree told Conner it was. Conner then climbed atop a work platform and attempted to cut the line. The resulting shock blew him off the platform and rendered him a quadriplegic.
Conner brought a negligence action against Kidwell and Ogletree, alleging they negligently carried out the details of their work in several respects. Generally, Conner alleged Kidwell failed to de-energize the line, failed to ensure the line had been de-energized, failed to warn Connor the line had not been de-energized, and failed to abide by Intercounty's safety rules. Conner also alleged Ogletree failed to supervise Kidwell in carrying out these responsibilities. Kidwell and Ogletree argued that Conner's petition merely alleges breaches of Intercounty's nondelegable duty to provide a reasonably safe workplace.
*319 The trial court agreed and granted summary judgment. Connor appealed, this Court granted transfer, and it has jurisdiction under article V, section 10, of the Missouri Constitution.
Evans
In November 2009, Russell Evans was injured on the job when a forklift driven by his co-employee, Monte Barrett, struck him and ran over his foot. Evans and Barrett were working to construct apartment buildings for their employer, Wilco Contractors, Inc. ("Wilco"). At the time of the accident, Barrett was driving a forklift with a load of trusses hanging from one of its two prongs. To stabilize the load, Evans walked alongside and held a tagline connected to the forklift and trusses. Barrett allegedly hit a rock, causing the load to shift. As the load shifted, Evans was pulled toward the forklift, which struck him and ran over his foot.
Evans sued Barrett for negligently operating the forklift. Barrett argued that Evans' petition merely alleges a breach of Wilco's nondelegable duty to provide a reasonably safe workplace. The trial court agreed and granted summary judgment in Barrett's favor. Evans appealed, this Court granted transfer, and it has jurisdiction under article V, section 10, of the Missouri Constitution.
Analysis
This Court reviews a grant of summary judgment de novo. Parr v. Breeden , 489 S.W.3d 774, 778 (Mo. banc 2016). "Summary judgment is proper when the moving party demonstrates there is no genuine dispute about material facts and, under the undisputed facts, the moving party is entitled to judgment as a matter of law." Id. (citations omitted). A defendant
can demonstrate entitlement to summary judgment by showing: (1) facts negating any of the [plaintiff's] necessary elements; (2) the [plaintiff], after an adequate period of discovery, has been unable, and will not be able, to produce evidence sufficient to allow the trier of fact to find the existence of any one of the [plaintiff's] elements; or (3) there is no genuine dispute of the existence of facts required to support the [defendant's] properly pleaded affirmative defense.
Id. (citation omitted).
Conner and Evans were injured between 2005 and 2012. During that period, a plaintiff could pursue a negligence action against a co-employee for an injury sustained in the course of work under certain circumstances. See Peters v. Wady Indus., Inc. , 489 S.W.3d 784, 789-90 (Mo. banc 2016). "To maintain a negligence action against a co-employee, a plaintiff must show that the co-employee breached a duty separate and distinct from the employer's nondelegable duty to provide a safe workspace for all employees." Parr , 489 S.W.3d at 782. To determine whether Conner and Evans met this burden, this Court must examine the scope of an employer's nondelegable duty to provide a safe workplace at common law.[1]
The common law surrounding workplace injuries arose against the backdrop of re spondeat superior *320 , i.e., the principle that a master generally is liable for the acts of its servants within the course and scope of their employment. Using this doctrine, an employee could sue the employer for injuries resulting from a co-employee's negligence. To prevent this, this Court-and others-adopted an exception to the doctrine of respondeat superior known as the "fellow servant" rule, holding an employer was not liable for an employee's injury resulting from the negligence of a co-employee.[2] See McDermott v. Pac. R. Co. , 30 Mo. 115, 116 (Mo. 1860) ("[A] servant, who is injured by the negligence or misconduct of his fellow servant, can maintain no action against the master for such injury.").
Of course, neither the doctrine of respondeat superior nor the "fellow servant" rule is directly relevant to this case because each dealt only with the employer's civil liability, a topic long ago rendered moot by the immunity granted to employers under the workers' compensation statutes. See § 287.120.1, RSMo Supp. 2005. A review of these common law principles is instructive only because they set the stage for an exclusion to the "fellow servant" exception known as the "nondelegable duty" rule. See Hough v. Texas & P.R. Co. , 100 U.S. 213, 217, 25 L.Ed. 612 (1879). ("[P]erhaps the most important [exception to the 'fellow servant' rule] arises from the obligation of the master, whether a natural person or a corporate body, not to expose the servant, when conducting the master's business, to perils or hazards against which he may be guarded by proper diligence upon the part of the master.").
*321 This exclusion was referred to as the "nondelegable duty" rule because this Court (and many others) had held the "duty of the master to exercise ordinary care to furnish his servant a reasonably safe place ... cannot be delegated." Bender v. Kroger Grocery & Baking Co. , 310 Mo. 488, 276 S.W. 405, 406 (1925). The name "nondelegable duty" was somewhat misleading, however, because this Court repeatedly had emphasized that corporations and other employers often can act only through their employees. As a result, such employers had no choice but to delegate to their employees the responsibility for complying with this "nondelegable duty." See, e.g. , Dayharsh v. Hannibal & St. J.R. Co. , 103 Mo. 570, 15 S.W. 554, 555 (1891) ("The duties which the master owes the servant may ... be delegated to subordinates, and the wide extent of modern business enterprises often necessitates so doing...."); Zellars v. Mo. Water & Light Co. , 92 Mo. App. 107, 124 (1902) ("Where a corporation is the master, it necessarily must entrust this duty into the hands of servants."); Carter v. Wolff , 296 S.W. 187, 189 (Mo. App. 1927) ("The master very rarely performs the service of fixing a reasonably safe place and keeping it safe himself, but performs the task through and by his servants.").
Nevertheless, what was "nondelegable" about the employer's "nondelegable duty" to provide a reasonably safe workplace was the employer's responsibility to ensure its duty was fulfilled. Even though an employer could-and, often, had to-assign to employees the tasks required to fulfill this duty, it could not delegate responsibility for ensuring those tasks were carried out or avoid the liability for injuries to an employee due to a co-employee's breach of this duty. Combs v. Rountree Const. Co. , 205 Mo. 367, 104 S.W. 77, 80 (1907) ("The duty of the master to exercise reasonable care, to the end that the place in which his servant is required to work is reasonably safe, is ... one that he cannot delegate to any servant, high or low, so as to escape liability for a negligent act thereof."); Bender , 276 S.W. at 408 (an employer is "liable for the negligent performance of any act directed by it to be performed by an employee, whether of high or the most lowly degree, which affect[s] the safety of [the workplace]"). "Inherently, a co-employee's breach of the employer's nondelegable duty to provide a safe workplace does not constitute a breach of a duty owed independently of the master-servant relationship." Peters , 489 S.W.3d at 795 ; see also id. at 800 (employer has a "nondelegable duty to provide a safe work environment, and it breaches that duty where it charged an employee with the responsibility to provide a reasonably safe work environment but the employee did not so provide") (citing Bender , 276 S.W. at 408 ).
At the time it was developed, the "nondelegable duty" rule was aimed at whether the employer was liable, i.e., whether the ordinary rules of respondeat superior would apply or whether application of that doctrine would be barred by the "fellow servant" rule.[3] Parr and Peters , however, look to the scope of that nondelegable duty to define the limits of a common law suit against a co-employee during the brief period (2005 to 2012) when such suits were permitted by Missouri's workers' compensation statutes. Parr , 489 S.W.3d at 778-79 ;
*322 Peters , 489 S.W.3d at 793-96. Under Parr and Peters , if a co-employee was negligent for breaching a duty owed by the employer (i.e., the nondelegable duty to provide a reasonably safe workplace), the co-employee cannot be held liable and the injured employee's sole recourse is workers' compensation. But, if a co-employee was negligent for breaching a duty separate and distinct from the employer's nondelegable duty to provide a reasonably safe workplace (i.e., either a breach of a duty unrelated to employment or an unforeseeable breach of the employer's duty to provide a safe workplace), the injured employee can sue the co-employee at common law to recover for those damages the employee has not recovered in the workers' compensation process. Parr , 489 S.W.3d at 778-79 ; Peters , 489 S.W.3d at 793-96.
The scope of the employer's nondelegable duty is broad. "It is the duty of the master to exercise reasonable care, commensurate with the nature of the business, to protect his servant from the hazards incident to it." Curtis v. McNair , 173 Mo. 270, 73 S.W. 167, 168 (1903) ; see also Smith v. S. Ill. & Mo. Bridge Co. , 326 Mo. 109, 30 S.W.2d 1077, 1083 (1930) (It is the duty of the master "to use all reasonable precautions which ordinary prudence would dictate, under the particular circumstances, in respect to the dangers to be reasonably anticipated and likely to occur to the servant in the course of the discharge of his duties.") (citation omitted).
In the course of applying this broad duty to particular factual scenarios, this Court has stated the employer's nondelegable duty includes, but is not limited to, the duty to "provide a safe place to work," "provide safe appliances, tools, and equipment for work," and "give warnings of dangers of which [an] employee might reasonably be expected to remain in ignorance." Peters , 489 S.W.3d at 795 (citations omitted); see also Parr , 489 S.W.3d at 779 (citations omitted).
Yet these merely were applications of the employer's broad duty to safeguard employees from reasonably foreseeable hazards in the workplace. See, e.g. , Beasley v. Linehan Transfer Co. , 148 Mo. 413, 50 S.W. 87, 89 (1899) ("If the catastrophe in question was one so liable to occur that a reasonably prudent and experienced man, in the business in which the [employer] was engaged, would have anticipated and could have guarded against it, but failed to do so, the [employer] would be liable."). And it bears repeating, the employer could not evade liability for a breach of this nondelegable duty merely by assigning compliance with the duty to an employee. See, e.g. , Combs , 104 S.W. at 80 (employer "cannot delegate [responsibility for duty to provide a safe workplace] to any servant, high or low, so as to escape liability for a negligent act thereof"); Bender , 276 S.W. at 408 (an employer is "liable for the negligent performance of any act directed by it to be performed by an employee, whether of high or the most lowly degree, which affect[s] the safety of [the workplace]"); see also Peters , 489 S.W.3d at 800 (employer has a "nondelegable duty to provide a safe work environment, and it breaches that duty where it charged an employee with the responsibility to provide a reasonably safe work environment but the employee did not so provide") (citation omitted).
But the employer's nondelegable duty to provide a reasonably safe workplace was not unlimited. Instead, like most common law duties, the employer's nondelegable duty was limited to those risks that were reasonably foreseeable to the employer. In Cain v. Humes-Deal Co. , 329 Mo. 1107, 49 S.W.2d 90, 90 (Mo. 1932), for example, the defendant's foreman sent the plaintiff and a co-employee to clean up *323 nails, plaster, and other debris in a dark, unfinished building. The plaintiff and the co-employee used shovels to sweep the debris into piles, shoveled the piles of debris into wheelbarrows, and carted the debris off the premises. Id. At some point, the plaintiff asked the foreman to provide them with a light source. Id. The foreman told the plaintiff a light was unnecessary, and the plaintiff returned to work. Id. While working, the plaintiff stooped down to pick up a board. Id. As he did so, the co-employee forcefully brought the edge of his shovel down on the floor, causing a loose nail to fly into the plaintiff's eye. Id. at 90-91. The plaintiff later sued the employer for breaching its duty to provide him with a safe workplace. Id. at 91. On appeal, this Court held the employer could not be liable for the co-employee's negligence because-even though the employer's nondelegable duty to provide a reasonably safe workplace included a duty to provide reasonable lighting-there was no reason to believe that the lack of lighting had anything to do with the co-employee's act in striking the floor with his shovel. Id. at 94 ("[T]here was no reason for McDaniel to strike his shovel forcibly against the floor.... His action in doing so was independent of the poor light in the room."). In other words, the co-employee's negligence was not foreseeable to the employer so as to place it within the scope of the employer's nondelegable duty.
This Court applied the same analysis, though with a different conclusion, in Kelso v. W. A. Ross Construction. Co. , 337 Mo. 202, 85 S.W.2d 527 (1935). There, the plaintiff worked with a large crew paving a highway under the supervision of a foreman. Id. at 532. The plaintiff worked atop a rock pile and indicated where nearly a dozen trucks should dump rocks and other materials. Id. Once the trucks dumped their loads, the plaintiff shoveled the rocks onto the pile to stack it as high as possible. Id. Before returning to the top of the rock pile to signal the next truck, the plaintiff cleared debris at the base of the pile. Id. Occasionally, truck drivers would back up and dump rocks on the pile on their own initiative. Id. at 533. Some, at the direction of the foreman, warned the plaintiff by yelling or honking their horns. Id. Others did not. Id. On the day of the accident, a truck driver negligently failed to warn the plaintiff and backed into him as he was clearing debris from the base of the rock pile. Id. at 533-34. The plaintiff sued his employer for failing to provide him with a reasonably safe workplace. Id. at 529-30. On appeal, the employer argued it could not be liable under the "fellow servant" exception because the "nondelegable duty" exclusion to that exception did not apply in that the plaintiff's injury was caused solely by the co-employee's negligence in carrying out the details of his work. Id. at 534. This Court rejected that argument and held the employer could have reasonably foreseen this injury and prevented it by taking reasonable precautions. Id. at 536-37. Accordingly, the co-employees were negligent, but their negligence was a breach of the employer's nondelegable duty to provide a reasonably safe workplace. Id. at 537.
The cases discussing and applying the "fellow servant" rule and the "nondelegable duty" exclusion to that rule are legion, but the common thread running throughout them is that the employer has a nondelegable duty to protect employees from reasonably foreseeable hazards in the workplace. See Beasley , 50 S.W. at 89 (employer's duty extends to any risk "so liable to occur that a reasonably prudent and experienced man, in the business in which the [employer] was engaged, would have anticipated and could have guarded against it").
*324 Plaintiffs in the present cases argue that Peters held the employer's nondelegable duty to provide a reasonably safe workplace was not implicated when a co-employee was negligent in carrying out the duties assigned to the employee by the employer. Peters did not so hold and, as discussed above, this Court has rejected substantially the same argument in the past. See, e.g., Combs , 104 S.W. at 80 (employer "cannot delegate [responsibility for duty to provide a safe workplace] to any servant, high or low, so as to escape liability for a negligent act thereof"); Bender , 276 S.W. at 408 (an employer is "liable for the negligent performance of any act directed by it to be performed by an employee, whether of high or the most lowly degree, which affect[s] the safety of [the workplace]"). In fact, Peters expressly rejects this argument. Peters , 489 S.W.3d at 800 (employer has a "nondelegable duty to provide a safe work environment, and it breaches that duty where it charged an employee with the responsibility to provide a reasonably safe work environment but the employee did not so provide") (citation omitted).
The confusion inherent in Conner's and Evans' arguments is that they focus on whether the co-employee (as opposed to the employer) was negligent. After the advent of workers' compensation, the employer is immune from suit and the employer's negligence is irrelevant in a suit against a co-employee. More importantly, for purposes of determining whether a co-employee can be liable for an employee's injury between 2005 and 2012, the co-employee's negligence is assumed. What matters, and the only thing that matters for purposes of applying Parr and Peters , is whether the duty the co-employee breached was part of the employer's duty to protect employees from reasonably foreseeable risks in the workplace. If so, the claim is barred. If not, the suit against the co-employee can proceed.
Said another way, for injuries occurring between 2005 and 2012, a co-employee cannot be liable in cases in which-had they been brought before workers' compensation statutes were enacted-the employer would have been held liable under the "nondelegable duty" exclusion to the "fellow servant" exception to the doctrine of respondeat superior. A co-employee can only be liable for such injuries if the employer (prior to workers' compensation) would not have been liable because the co-employee either breached a duty unrelated to the master-servant relationship or committed a breach of workplace safety that was so unforeseeable to the employer as to take it outside the employer's nondelegable duty to provide a reasonably safe workplace.
Peters concentrates on the latter of these categories,[4] holding a plaintiff may pursue a negligence action against a co-employee for an injury arising in the course of work if that injury "results from transitory risks created by the co-employee's *325 negligence in carrying out the details of his or her work," Peters , 489 S.W.3d at 796 (emphasis added).[5] As the context of this statement makes clear, however, a "transitory risk" is a risk that was not reasonably foreseeable to the employer. To begin with, the case used in Peters to illustrate a "transitory risk" involved an unforeseeable risk. See id. (summarizing Marshall v. Kansas City , 296 S.W.2d 1 (Mo. 1956) ). In Marshall , this Court held the employer did not breach its duty to provide the plaintiff with a reasonably safe workplace because nothing under the circumstances-whether the tools, the place of work, or how the work was generally being done-suggested the employer could reasonably foresee that a co-employee would "suddenly and unexpectedly" jerk a hose, injuring the plaintiff in the process. Marshall , 296 S.W.2d at 3.
In this way, Marshall is similar to Cain , where this Court held the employer's nondelegable duty to provide a reasonably safe (and adequately lighted) workplace did not extend to protecting an employee from injuries arising from a co-employee's unforeseeable negligence in suddenly and violently striking the ground with a shovel, causing a nail to fly into the employee's eye. Cain , 49 S.W.2d at 94-95.[6] Moreover, foreseeability provides the basis for distinguishing Marshall and Cain from Kelso , where the co-employee's negligence in failing to provide a safe workplace was foreseeable to the employer and, therefore, a breach of the employer's nondelegable duty. Kelso , 85 S.W.2d at 537.
Peters was not the first case to use the term "transitory risk." Instead, this term has a settled meaning in this Court's jurisprudence and refers to a co-employee's negligence that decreases workplace safety in a way that was not reasonably foreseeable to the employer and, therefore, not within the employer's nondelegable duty to provide a reasonably safe workplace. In Redmond v. Quincy, O. & K.C.R. Co. , 225 Mo. 721, 126 S.W. 159 (1909), for example, this Court explained that a "master [who] furnishes a reasonably safe place for the servant to work in ... is not liable for a transitory danger arising out of a single occurrence in which [the master] is not at fault, and of which [the master] has no notice or opportunity to correct ." Id. at 165 (emphasis added).[7] In modern parlance, *326 there was no breach of the employer's nondelegable duty to provide a reasonably safe workplace because this risk was not reasonably foreseeable to the employer.[8]
This Court's discussion of the "something more" test in Peters also supports the conclusion that the scope of the employer's nondelegable duty (and, therefore, the cases in which an employee cannot sue a co-employee for the breach of such a duty) turns on whether the risk is reasonably foreseeable to the employer. Though Peters holds the "something more" test inaccurately stated the common law for the employer's nondelegable duty, the Court emphasized that "cases applying the 'something more' test can still prove instructive in a common law analysis." Peters , 489 S.W.3d at 797. This is because those cases properly discern whether the risk at issue was reasonably foreseeable to the employer and, therefore, within the employer's nondelegable duty to provide a reasonably safe workplace.[9]
In sum, plaintiffs Conner and Evans incorrectly focus on isolated statements in Peters that an employee can sue a co-employee for negligence in "carrying out the details" of his or her work but ignore the surrounding explanations, which make it clear the Court was referring only to *327 cases in which such negligence was not reasonably foreseeable to the employer. Moreover, Peters expressly acknowledges, "when an employee's injuries result from ... the manner in which the work was being done, the injuries are attributable to a breach of the employer's nondelegable duty to provide a safe workplace." Id. at 796 (emphasis added).
The common law always has held an employer cannot fulfill its duty to provide a reasonably safe workplace merely by telling its employees to "make it so" if the employee's negligence in carrying out that duty was reasonably foreseeable. Id. at 800 (employer has a "nondelegable duty to provide a safe work environment, and it breaches that duty where it charged an employee with the responsibility to provide a reasonably safe work environment but the employee did not so provide") (citation omitted); see also Combs , 104 S.W. at 80 (employer "cannot delegate [responsibility for duty to provide a safe workplace] to any servant, high or low, so as to escape liability for a negligent act thereof"); Bender , 276 S.W. at 408 (an employer is "liable for the negligent performance of any act directed by it to be performed by an employee, whether of high or the most lowly degree, which affect[s] the safety of [the workplace]"). Had Peters intended to change such a fundamental principle, it would have stated so explicitly.
Conner
Here, Conner alleges Kidwell negligently carried out the details of his work by failing to ensure the power line was de-energized, failing to warn him the line was energized, and failing to abide by Intercounty's safety rules. If true, the allegations show Kidwell was negligent, but that is beside the point. The question presented is whether, assuming Kidwell was negligent, his negligence was due to a breach of Intercounty's duty to provide a reasonably safe workplace or a breach of some duty separate and distinct from Intercounty's duty.
The risks associated with working around an energized line are reasonably foreseeable to Intercounty. Therefore, the duty to ensure lines are de-energized before its workers confront them is part of Intercounty's nondelegable duty to provide its workers with a reasonably safe workplace. It attempted to fulfill these duties by promulgating safety rules and relying upon its workers and supervisors to ensure transmission lines were de-energized. There is no reason to believe Intercounty was negligent in doing so, but that-too-is irrelevant because Intercounty is immune for any liability stemming from its own negligence or that of its employees. Instead, what matters is whether Kidwell's negligence in fulfilling Intercounty's duty to ensure the line was de-energized was reasonably foreseeable to Intercounty. It was. Accordingly, Kidwell's negligence was due to a breach of Intercounty's nondelegable duty to provide a safe workplace.
At common law, prior to workers' compensation, Intercounty would have been liable for Kidwell's negligence. In the present circumstances, however, the trial court properly granted summary judgment in Kidwell's favor. Peters , 489 S.W.3d at 800 (employer has a "nondelegable duty to provide a safe work environment, and it breaches that duty where it charged an employee with the responsibility to provide a reasonably safe work environment but the employee did not so provide") (citing Bender , 276 S.W. at 406 ).
Similarly, Conner claimed Ogletree negligently carried out the details of his work by failing to ensure the line was de-energized, failing to warn Conner the line was energized, failing to abide by Intercounty's safety rules, and failing to *328 properly supervise Kidwell. In every instance, the thing Conner alleges Ogletree failed to do was something Intercounty instructed Ogletree to do as part of Intercounty fulfilling its duty to provide a reasonably safe workplace. More importantly, it was reasonably foreseeable to Intercounty that an employee would be negligent in carrying out these responsibilities in the way Ogletree was negligent. Peters , 489 S.W.3d at 799 (affirming judgment because "this is a classic case of a supervisory employee breaching the employer's nondelegable duty to provide a safe workplace"). Accordingly, Conner failed to allege Ogletree breached a duty separate and distinct from Intercounty's duty to provide a reasonably safe workplace, and the trial court properly granted summary judgment in Ogletree's favor.
Evans
Evans, like Conner, alleged his co-employee negligently carried out the details of his work in that Evans claims Barrett negligently drove the forklift and was not licensed, certified, or adequately trained to operate the forklift safely. Injuries to employees working on and around moving forklifts were reasonably foreseeable to Wilco and, therefore, Wilco had a duty to take reasonable precautions to protect its employees from such risks. Moreover, it was reasonably foreseeable to Wilco that an employee would be injured if a co-employee negligently operated a forklift in the same way Evans alleges Barrett was negligent in this case. See id. at 795 ("[i]ncluded within the employer's duty to provide a safe workplace is a duty to see that instrumentalities of the workplace are used safely"); Parr , 489 S.W.3d at 779 (duty to ensure that all drivers were "safe to operate a commercial motor vehicle" fell "squarely within the [employer's] duty to provide a safe workplace"). Accordingly, Evans failed to allege Barrett breached a duty separate and distinct from Wilco's duty to provide a reasonably safe workplace, and the trial court properly granted summary judgment in Barrett's favor.
Conclusion
Neither Evans nor Conner alleged a breach of a duty unrelated to employment, Peters , 489 S.W.3d at 794-95 ("employees are liable at common law to third persons, including co-employees, for breaching a legal duty owed independently of any master-servant relationship"), or a breach of workplace safety that was so unforeseeable to the employer as to take it outside the employer's nondelegable duty to provide a reasonably safe workplace, id. at 796 (describing such a breach as a "transitory risk"). Only actions against co-employees for injuries between 2005 and 2012 based upon such an allegation may proceed. Because Evans and Conner failed to allege such a breach of duty, the trial court's judgments are affirmed.
Fischer, C.J., Russell, Powell, Breckenridge and Stith, JJ., concur;
Draper, J., concurs in result in separate opinion filed.

Common law decisions prior to the advent of workers' compensation laws were difficult to reconcile in their own time and remain difficult to reconcile now. See N. Pac. R. Co. v. Hambly , 154 U.S. 349, 351, 14 S.Ct. 983, 38 L.Ed. 1009 (1894) ("There is probably no subject connected with the law of negligence which has given rise to more variety of opinion.... It is useless to attempt an analysis of the cases which have arisen in the courts of the several states, since they are wholly irreconcilable in principle, and too numerous even to justify citation."); N. Pac. Ry. Co. v. Dixon , 194 U.S. 338, 343, 24 S.Ct. 683, 48 L.Ed. 1006 (1904) ("Perhaps no [area of law] has been more frequently considered by the courts ..., and none attended with more varied suggestions and attempted qualifications."); Grattis v. Kan. City, P. & G.R. Co. , 153 Mo. 380, 55 S.W. 108, 111 (1900) ("There is no branch of the law that has received more attention than that relating to master and servant, and there is none as to which a greater diversity of opinion has been expressed, and certainly none that is to-day more uncertain.... [W]ith the characteristic ingenuity and inventiveness of the age, distinctions have been drawn ... with the result that much contrariety of opinion exists, and the whole matter is unsettled, and left in an unsatisfactory state."). The Court refers to these cases now, not to reconcile them but for the light they shed on the nature and scope of the employer's nondelegable duty to provide a reasonably safe workplace.

The "fellow servant" rule originally was justified under principles of assumption of the risk. See Farwell v. Boston & W.R. Corp. , 45 Mass. 49, 57 (1842) ("[An employee] takes upon himself the natural and ordinary risks and perils incident to the performance of [his] services, ... [including] the perils arising from the carelessness and negligence of those who are in the same employment. These are perils which the [employee] is as likely to know, and against which he can as effectually guard, as the [employer]."). This Court initially endorsed that rationale. See, e.g., Gibson v. Pac. R. Co. , 46 Mo. 163, 169 (1870) ("A workman or servant, on entering upon any employment, is supposed to know and to assume the risk naturally incident thereto; if he is to work in conjunction with others, he must know that the carelessness or negligence of one of his fellow-servants may be productive of injury to himself...."); Schaub v. Hannibal & St. J.R. Co. , 106 Mo. 74, 16 S.W. 924, 927 (1891) ("When several persons are thus employed, there is necessarily incident to the service of each the risk that the others may fall in that care and vigilance which are essential to his safety. In undertaking the service, he assumes that risk, and if he should suffer he cannot recover from his employer.") (citation and internal quotation marks omitted). Over time, however, this Court appeared more inclined to justify the fellow servant rule on the ground that it encouraged employees to bring negligent behavior to an employer's attention. See, e.g. , Koerner v. St. Louis Car Co. , 209 Mo. 141, 107 S.W. 481, 484 (1907) ("The real and only point of distinction, it seems to us, arises out of the fact that servants are so associated and related in the performance of their work that they can observe and influence each other's conduct and report any delinquency to a correcting power.") (citation omitted).

If the co-employee was negligent for breach of a duty separate and distinct from the employer's duty to provide a reasonably safe workplace, only the co-employee was liable. Peters , 489 S.W.3d at 794. But if the co-employee was liable for breach of the employer's duty to provide a reasonably safe workplace, only the employer was liable. Id. (citing Hansen v. Ritter , 375 S.W.3d 201, 211 (Mo. App. 2012) ).

As Peters makes clear, allegations of a breach of duty separate from the employer's nondelegable duty to provide a reasonably safe workplace come in two distinct categories: (1) allegations that a co-employee breached a duty unrelated to co-employee's employment, Peters , 489 S.W.3d at 794-95 ("employees are liable at common law to third persons, including co-employees, for breaching a legal duty owed independently of any master-servant relationship"); and (2) allegations that a co-employee breached the employer's nondelegable duty to provide a safe workplace in a manner that was not reasonably foreseeable to the employer, id. at 796 (describing such a breach as a "transitory risk"). Cases involving allegations in the first category are rare and easy to spot. The appeals now before the Court in these cases and in similar cases decided contemporaneously herewith involve allegations that seek (but fail) to come within the second category.

Similar statements appear at Peters , 489 S.W.3d at 797, 799, and 800.

See also Tauchert v. Boatmen's Nat. Bank of St. Louis , 849 S.W.2d 573 (Mo. banc 1993) (employer had no reason to foresee that a foreman, in the course of confirming that parking garage elevators were operational, would construct a makeshift hoist system to raise an elevator, instruct the plaintiff to climb aboard the elevator, and so negligently construct the makeshift hoist system that it would fail, causing the plaintiff to plummet five stories to the bottom of the elevator shaft). For more of this Court's cases concerning whether a co-employee's negligence in failing to carry out the employer's duty to provide a safe workplace was not reasonably foreseeable to the employer (and, therefore, not within the employer's nondelegable duty), see note 9, below.

This Court is not alone in using the term "transitory risk" to refer to a workplace risk that was not reasonably foreseeable to the employer and, therefore, not within the employer's nondelegable duty to provide a reasonably safe workplace. The term appears to have been used quite often in Massachusetts, where the "fellow servant" rule was created. Farwell , 45 Mass. at 57. As used by that state's highest court, the term "transitory risk" clearly refers to a risk that is not reasonably foreseeable to the employer and cannot be guarded against by taking reasonable precautions. See, e.g. , McCann v. Kennedy , 167 Mass. 23, 44 N.E. 1055, 1055 (1896) ("[T]he danger was momentary, and it would be impracticable to require employers to warn their men of every such transitory risk when the only thing the men do not know is the precise time when the danger will exist."); Whittaker v. Bent , 167 Mass. 588, 46 N.E. 121, 122 (1897) ("The absolute obligation of an employer to see that due care is used to provide safe appliances for his workmen is not extended to all the passing risks which arise from short-lived causes."); Morrissey v. Boston & M.R.R. , 230 Mass. 171, 119 N.E. 675, 677 (1918) ("The risk of injury ... was temporary and transitory, which the defendant ought not reasonably to be held to have anticipated and guarded against."); Dixon , 194 U.S. at 355, 24 S.Ct. 683 (per White, J., dissenting) ("The doctrine of transitory risk ... really amounts only to this: that where the work is of such a character that dangers which cannot be foreseen or guarded against by the master ... suddenly and unexpectedly arise, there is no neglect of a positive duty owing by the master in failing, by himself or the agencies he employs, to anticipate and protect against that which the utmost care on his part could not have prevented.").

The concurring opinion asserts the following four cases would have reached opposite results had those courts applied the reasoning outlined in this case and in McComb v. Norfus , 541 S.W.3d 550 (Mo. banc 2018) (No. 96042, decided Mar. 6, 2018): Burns v. Smith , 214 S.W.3d 335 (Mo. banc 2007) ; Tauchert , 849 S.W.2d 573 ; Marshall , 296 S.W.2d 1 ; and Pavia v. Childs , 951 S.W.2d 700 (Mo. App. 1997). Applying the reasoning in this case to Burns , Tauchert , Marshall , and Pavia , however, yields the same results because the injuries in those cases resulted from unforeseeable risks created by co-employees. Burns , 214 S.W.3d at 336 (supervisor directed an employee operating a water pressure tank to "[r]un it till it blows"); Tauchert , 849 S.W.2d at 574 (supervisor rigged a makeshift hoist system to raise an elevator); Marshall , 296 S.W.2d at 3 (co-employee "suddenly and unexpectedly" jerked a hose, injuring plaintiff); Pavia , 951 S.W.2d at 701-02 (supervisor directed employee to stand on a wooden pallet while the supervisor lifted him 15 feet into the air). Nothing in this opinion is inconsistent with the outcomes in these previous cases.

Compare Burns , 214 S.W.3d at 336 (employer had no reason to foresee a supervisor with poor eyesight would salvage an ancient, leaking water pressure tank, negligently weld the tank to a dangerously corroded portion of a concrete delivery truck, and instruct the plaintiff to drive and work around the truck in the face of this risk), with Kelley v. DeKalb Energy Co. , 865 S.W.2d 670 (Mo. banc 1993) (employer could reasonably foresee an employee at a plant where it manufactured tractors mounted with flame-making machines might be injured if reasonable precautions were not taken to ensure these contraptions were carefully designed, manufactured, and tested), and State ex rel. Taylor v. Wallace , 73 S.W.3d 620 (Mo. banc 2002) (employer could reasonably foresee an employee standing and holding onto the side of a trash truck during the rounds might be injured if precautions were not taken to ensure the truck was driven carefully), overruled on other grounds by McCracken v. Wal-Mart Stores E., LP , 298 S.W.3d 473 (Mo. banc 2009).