

# In the Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| CHARLES JOHN BESTGEN, | ) | |
| Appellant, | ) | WD83865 |
| v. | ) | |
| | ) | |
| GENE HAILE, et al., | ) | FILED: March 1, 2022 |
| Respondents. | ) | |

## APPEAL FROM THE CIRCUIT COURT OF CALLAWAY COUNTY
### THE HONORABLE J. HASBROUCK JACOBS, JUDGE

### BEFORE DIVISION TWO: W. DOUGLAS THOMSON, PRESIDING JUDGE, LISA WHITE HARDWICK AND EDWARD R. ARDINI, JR., JUDGES

Charles Bestgen appeals from the summary judgment entered in favor of Gene Haile on Bestgen's negligence claim against Haile. Bestgen contends that the circuit court erred in entering summary judgment because genuine issues of material fact remain as to whether Haile can be held personally liable as a co-employee under the 2012 version of Section 287.120.1[1] for injuries Bestgen incurred at work. For reasons explained herein, we affirm.

---

[1] All statutory references are to the Revised Statutes of Missouri 2000, as updated by the 2012 Cumulative Supplement, unless otherwise indicated.

**FACTUAL AND PROCEDURAL HISTORY**

In 2013, the City of Fulton hired Gene Haile Excavating, Inc., ("Employer") to install sewer mains. Employer is a small family business with two shareholders, Haile and his wife. Haile is the president and sole director of Employer, is "in charge," and is Employer's "top authority." Haile performs physical labor for Employer when necessary. In November 2013, Employer had five or six employees.

Installing a sewer main involves digging trenches in the ground. The contract between Employer and the City of Fulton required Employer to comply with Occupational Safety and Health Administration ("OSHA") regulations regarding trench excavation, including the use of trench boxes. A trench box is a metal structure that is designed and engineered to withstand the pressures of a trench collapse. OSHA regulations require trench protection, such as a trench box, for any trench deeper than five feet. Haile knew that OSHA regulations applied to trenching work, and he was aware, based on his training and experience, of the risks of trench collapses.

Gerald Noland was the construction inspector for the City of Fulton. The trenching that Employer was doing was close to an existing sewer line. According to Noland, Employer "hit every city utility line and damaged it." Noland warned Haile that Employer's workers "were moving too fast and needed to slow down around the utilities." Noland also told Haile that, since the trenching was getting deeper, shoring would be needed. When Noland suggested using trench boxes,

Haile's response was that it would slow down the project. According to Noland, because Employer was excavating next to an existing sewer line, soil, rock, and backfill were concerns due to the potential for a trench collapse.

On November 25, 2013, Bestgen was employed by Employer and was working on the Fulton project. At the point where Bestgen was working, the trench was approximately ten to twelve feet deep and about two and one-half to three feet wide. Haile went into the trench that day, laid down in it, and tested the consistency of the soil by kneading it in his hand. Haile chose not to install a trench box, even though OSHA regulations required a protective device in the trench, Haile knew OSHA required one, and Employer owned a trench box. Haile also knew that there was a greater risk of a cave-in without a trench box and that a trench box would prevent a collapse and make the workplace safe.

At some point that day, Bestgen and Haile were standing outside of the trench while a track hoe was digging in the trench. Haile asked Bestgen to enter the trench, and he complied. While he was in the trench, Bestgen was placing a bucket over the end of a pipe when he heard someone yell, "Cave-in!" Bestgen stood up but was unable to escape the trench before it collapsed. The trench collapse injured Bestgen. Haile admitted that he increased the risk of injury to Bestgen by ordering him to descend into a trench that did not have a trench box. Haile did not intend to injure Bestgen, a fact which Bestgen admitted.

Following the trench collapse, OSHA issued Employer three citations for violating trenching regulations. Employer admitted it violated OSHA regulations. Haile signed the paperwork stating that Employer agreed with the violations.

Bestgen later sued Haile personally for negligence, alleging that Haile purposefully and dangerously caused or increased the risk of injury to him by instructing him and his co-workers to dig a ten to twelve feet deep trench[2] without using trench boxes or another protective system; instructing him to go into a ten to twelve feet deep trench without a protective system; and/or instructing him to go into a ten to twelve feet deep trench that Haile knew or should have known was about to collapse.

After conducting discovery, Haile moved for summary judgment, asserting that Bestgen's allegations against him were nothing more than claims that Employer breached its nondelegable duties by failing to provide a safe workplace and safe equipment and failing to enforce workplace safety rules. Haile also asserted that he was released from personal liability as a co-employee defendant under the 2012 amendment to the Workers' Compensation Law because he did not act with a purpose to increase the risk of harm to Bestgen or to cause his injuries. Bestgen filed suggestions in opposition to Haile's summary judgment motion, and Haile filed a reply. Following a hearing, the court granted Haile's motion and entered summary judgment in favor of Haile. Bestgen appeals.

---

[2] In his petition, Bestgen alleged that the trench was thirteen feet deep; however, in his response to Haile's summary judgment motion, he admitted that the trench was ten to twelve feet deep.

4

Appellate review of summary judgment is essentially *de novo. Green v. Fotoohighiam*, 606 S.W.3d 113, 115 (Mo. banc 2020). Summary judgment is appropriate when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Rule 74.04(c)(6). Where, as in this case, the movant is the defendant, the movant establishes the right to judgment as a matter of law by showing one of the following:

> (1) facts negating any one of the claimant's elements necessary for judgment; (2) that the claimant, after an adequate period of discovery, has not been able to—and will not be able to—produce evidence sufficient to allow the trier of fact to find the existence of one of the claimant's elements; or (3) facts necessary to support [its] properly pleaded affirmative defense.

*Roberts v. BJC Health Sys.*, 391 S.W.3d 433, 437 (Mo. banc 2013).

In determining whether the movant has met this burden, we review the summary judgment record in the light most favorable to the party against whom the judgment was entered and accord that party the benefit of all reasonable inferences. *Green,* 606 S.W.3d at 116. We "do not weigh conflicting evidence or make credibility determinations." *Brentwood Glass Co. v. Pal's Glass Serv., Inc.*, 499 S.W.3d 296, 302 (Mo. banc 2016). "Instead, summary judgment tests 'simply for the existence, not the extent' of genuine issues of material fact." *Id.* (citation omitted). "A factual question exists if evidentiary issues are actually contested, are subject to conflicting interpretations, or if reasonable persons might differ as to their significance." *Id*. (citation omitted). "Only evidence that is admissible at

5

trial can be used to sustain or avoid summary judgment." *Jones v. Union Pac. R.R. Co.*, 508 S.W.3d 159, 162 (Mo. App. 2016) (citation omitted).

## ANALYSIS

Bestgen's three points on appeal challenge the court's entry of summary judgment in favor of Haile on his negligence claim against Haile. Bestgen argues that, under the 2012 amendment to Section 287.120.1, Haile is personally liable for negligence as a co-employee for causing his injuries in the trench collapse.

For employee injury cases arising prior to 2012, Section 287.120.1 of the Workers' Compensation Law provided immunity from common law negligence actions only to employers and did not extend such immunity to co-employees. *Peters v. Wady Indus., Inc.*, 489 S.W.3d 784, 800 (Mo. banc 2016); § 287.120.1, RSMo Supp. 2005. Instead, the common law solely governed a co-employee's liability. *Peters*, 489 S.W.3d at 800. To assert a common law negligence claim against a co-employee personally, a plaintiff was required to establish that the co-employee committed a breach of a duty unrelated to employment, that is, "a legal duty owed independently of any master-servant relationship," or "a breach of workplace safety that was so unforeseeable to the employer as to take it outside the employer's nondelegable duty to provide a reasonably safe workplace." *Conner v. Ogletree*, 542 S.W.3d 315, 328 (Mo. banc 2018) (quoting *Peters*, 489 S.W.3d at 794-96).

6

In 2012, the legislature amended Section 287.120.1 to extend immunity to co-employees, with one exception. The amended statute provides, in pertinent part:

> Every employer subject to the provisions of this chapter shall be liable, irrespective of negligence, to furnish compensation under the provisions of this chapter for personal injury or death of the employee by accident arising out of and in the course of the employee's employment. *Any employee of such employer shall not be liable for any injury or death for which compensation is recoverable under this chapter and every employer and employees of such employer shall be released from all other liability whatsoever, whether to the employee or any other person, except that an employee shall not be released from liability for injury or death if the employee engaged in an affirmative negligent act that purposefully and dangerously caused or increased the risk of injury.*

§ 287.120.1 (emphasis added). Pursuant to the amendment, a co-employee is released from liability for injury or death *except* when the co-employee "engaged in an affirmative negligent act that purposefully and dangerously caused or increased the risk of injury." *Id*.

Bestgen insists that the 2012 amendment to Section 287.120.1 does not simply state the standard for an exception to immunity. Rather, he argues that it provides a new statutory cause of action for co-employee negligence that preempts common law co-employee negligence claims, rendering the foreseeability and nondelegable duty analyses of common law claims inapplicable. Accordingly, in Points I and III, Bestgen contends the court erred in granting summary judgment because Haile is liable for negligence under Section

7

287.120.1 in that Haile engaged in an affirmative negligent act that purposefully and dangerously caused or increased the risk of injury to Bestgen, or genuine issues of material fact remain as to whether Haile engaged in such an act.

The Supreme Court clarified the effect of the 2012 amendment to Section 287.120.1 on co-employee liability claims in *Brock v. Dunne*, 637 S.W.3d 22 (Mo. banc 2021). In *Brock*, the plaintiff injured his thumb in a machine after a co-employee intentionally removed a safety guard from the machine, in contravention of the company's safety rules and the machine manufacturer's warnings, and directed the plaintiff to clean the machine. *Id*. at 25. After a jury returned a $1.05 million verdict in favor of the plaintiff, the Supreme Court reversed, finding that the plaintiff failed to establish that Section 287.120.1's exception to co-employee immunity applied. *Id*. at 25-26.

In so holding, the Court first noted that the amended "Section 287.120.1 does not preempt the common law claim and create a new statutory cause of action for co-employees to bring against their culpable co-workers." *Id*. at 28. "Instead, as a workers' compensation statute, it provides immunity to co-employees and employers unless the statutory exception applies." *Id*. The Court then outlined the burdens of proof in applying Section 287.120.1, stating that the immunity provided by the statute is an affirmative defense and, after the defendant proves that he or she is a co-employee entitled to immunity, the burden shifts to the plaintiff to prove that the co-employee's actions fell "within the statutory exception to the general rule of statutory immunity." *Id*. at 29.

8

The Court explained that, to meet this burden, the plaintiff must prove that "the co-employee engaged in affirmative conduct that constitutes at least negligence" and that the co-employee did so "with the specific purpose to cause or increase the risk of injury," which the Court described as the "mental element to the exception." *Id.* Because there was no direct evidence in *Brock* indicating that the co-employee acted with the purpose to cause or increase the risk of injury to the plaintiff, the plaintiff argued that the factfinder could infer the requisite purposeful mental state from the fact that the co-employee intentionally removed the safety guard in contravention of the company's safety rules and the machine manufacturer's warnings. *Id.*

The Court disagreed, finding that such an inference was "neither reasonable nor rational given the circumstances surrounding the case," which indicated only that the injuries were the result of "an unfortunate accident in the workplace, not the deliberate and deviant actions of a co-worker who sought and desired to cause or increase the risk of injury to a co-employee." *Id.* at 29-30. The Court noted that, consistent with the dictionary definition of "purpose," Missouri case law states that "[a[n individual acts purposely when it is the person's conscious object to engage in that conduct or to cause that result." *Id.* at 30 (internal quotation marks and citations omitted). Applying this definition, the Court stated that, to support the inference that the plaintiff was seeking, the evidence "would need to demonstrate that, when [the co-employee] removed the safety guard, his purpose – or the conscious object of what he sought to attain –

9

was to increase the risk of injury to [the plaintiff]." *Id*. The Court found that, while the evidence showed that the co-employee "acted outside the safety rules," such evidence demonstrated only that the co-employee acted negligently, and "not that he intended to cause or increase the risk of any injury to [the plaintiff] or others." *Id*. The Court concluded, "The fact that an intentional act may increase the risk of injury to others does not unequivocally lead to the conclusion that the actor intended to increase the risk of injury. Absent more, a negligent act is, simply, negligence." *Id*. Because the plaintiff in *Brock* failed to establish that the co-employee's "affirmative, negligent act was employed purposefully and dangerously to cause or increase the risk of injury," the Court held that the co-employee was entitled to immunity under Section 287.120.1. *Id*.

Applying these principles from *Brock*, the undisputed facts in the summary judgment record show that, while Haile committed the affirmative, negligent act of not shoring the trench with trench boxes in contravention of OSHA regulations before directing Bestgen to get into the ditch, he did not do so with the conscious object to cause or increase the risk of injury to Bestgen. In the parties' statement of uncontroverted facts, Haile admitted that his actions increased the risk of injury to Bestgen, but he stated that he did not intend to injure Bestgen. Bestgen admitted this fact. Given that Bestgen admitted that Haile did not intend to injure him, there appears to be no genuine issue of material fact that Haile's affirmative, negligent act was not employed purposefully and dangerously to cause or

10

increase the risk of injury to Bestgen. Therefore, Haile is entitled to immunity under Section 287.120.1.

Even if there were a genuine issue of material fact as to whether Haile was entitled to immunity, however, Bestgen would be unable to produce the evidence necessary to support a claim of common law negligence against Haile. In addition to interpreting and applying Section 287.120.1's immunity provision, the Court in *Brock* also restated and applied the standard for common law negligence claims against co-employees. *Id*. at 31-33.[3] The Court stated that, pursuant to its prior decision in *Ogletree*, a claim for co-employee liability under the common law involves a "multi-step analysis." *Id*. at 31 (citing *Ogletree*, 542 S.W.3d at 324). The plaintiff is required to show: (1) a claim of negligence; and (2) that "the nondelegable duty doctrine does not apply to a co-employee's actions." *Id*. (citing *Ogletree*, 542 S.W.3d at 324).

Looking specifically at (2), the employer has a broad duty to provide a reasonably safe work environment. *Id*. To succeed on a common law negligence claim against a co-employee, "the plaintiff must show the defendant co-employee breached a duty separate and apart from the employer's foreseeable duty to provide a safe workplace." *Id*. While the co-employee may not have exercised

---

[3] Although the Court in *Brock* found that the co-employee was immune from liability and that no further analysis was required, the Court addressed the issue of common law negligence of co-employees in the workplace in an attempt "to avoid the confusion to litigants, employees, and employers." *Id*. at 30-31.

11

ordinary care, it is the employer, and not the co-employee, who will be held liable for any resulting injuries if the co-employee's negligent act falls within the employer's nondelegable duty to provide a safe workplace. *Id.* at 31-32. This is true "even though the co-employee[ ] may have negligently failed to follow established workplace rules." *Id.* at 32 (citing *Ogletree*, 542 S.W.3d at 328). "[I]t is the employer's *sole* duty to provide a safe work environment, and a co-employee's negligence in carrying out the duties assigned to the employee by the employer is not actionable at common law as a breach of a duty separate and distinct from the employer's nondelegable duty." *Id.* (emphasis added). Applying these principles, the Court in *Brock* found that, because the co-employee's "act of lifting the safety guard fell within the employer's duty to provide a safe work environment," the duty was nondelegable. *Id.* Thus, "[a]ny alleged negligence on the part of [the co-employee] in lifting the safety guard . . . cannot form the basis of common law liability." *Id.* at 32-33.

Here, Bestgen alleged that Haile was negligent in instructing Bestgen and his co-workers to dig a ten to twelve feet deep trench without using trench boxes or another protective system; instructing Bestgen to go into a ten to twelve feet deep trench without a protective system; and instructing Bestgen to go into a ten to twelve feet deep trench that he knew or should have known was about to collapse. If true, these allegations show that Haile was negligent.

Haile's negligence, however, fell within Employer's foreseeable nondelegable duty to provide a safe workplace. *Id.* The risks associated with

12

working in a ten to twelve feet deep trench without first installing a protective system, such as a trench box, were reasonably foreseeable to Employer, an excavating company. *See Ogletree,* 542 S.W.3d at 327. Therefore, the duty to ensure that protective systems were installed in trenches before its workers entered the trenches was part of Employer's nondelegable duty to provide its employees with a reasonably safe workplace. *See id.* Employer attempted to fulfill this duty by providing a trench box and relying upon its workers, including Haile,[4] to ensure that the trench box was installed before its workers entered the trench. *See id.* Haile's negligence in fulfilling Employer's duty to ensure that the trench box was installed in the trench before Employer's workers entered the trench was not a sudden and unexpected act but was reasonably foreseeable to Employer. *See id.*

Bestgen argues in Point II that Haile's breach was outside the scope of Employer's nondelegable duty because Haile personally decided not to use Employer's provided trench box in violation of OSHA regulations and ordered Bestgen into the unsecured trench knowing it showed signs of collapse. Bestgen contends that Haile's actions created an additional danger beyond what Bestgen

---

[4] The term "employer" is defined, in pertinent part, as "[e]very person, partnership, association, *corporation*, limited liability partnership or company . . . using the service of another for pay." § 287.030.1(1) (emphasis added). An "employee" is defined, in pertinent part, as "every person in the service of any employer, as defined in this chapter, under any contract of hire, express or implied, oral or written, or under any appointment or election, *including executive officers of corporations*." § 287.020.1 (emphasis added). Therefore, while Haile is Gene Haile Excavating, Inc.'s president and sole director, he is, under the Workers' Compensation Law, an employee of the corporation.

would normally face in the work environment. The Court in *Peters*, however, rejected a similar argument, finding that, while the supervisor co-employee was responsible for the work being performed in an unsafe manner and in violation of OSHA regulations, the supervisor was not negligent in carrying out the details of *his work* but was negligent in carrying out the employer's nondelegable duty to provide a safe workplace. 489 S.W.3d at 799. Haile's negligence in this case was in carrying out Employer's nondelegable duty to provide a safe workplace. *See id.* Therefore, Haile cannot be held personally liable on a claim of common law negligence. The circuit court did not err in granting summary judgment in favor of Haile on Bestgen's negligence claim against him. Points I, II, and III are denied.

### CONCLUSION

The judgment is affirmed.

_____
LISA WHITE HARDWICK, JUDGE

ALL CONCUR.

14