Mary R. Russell, Judge
Edward R. McComb died while driving a delivery vehicle for his employer. His widow brought a wrongful death action against her husband's supervisory co-employees, Gregory Norfus and David Cheese (collectively, "Co-employees"). The trial court agreed with Co-employees that the suit was barred by the exclusivity provision in Missouri's workers' compensation statutes, section 287.120,[1] and granted summary judgment. Felecia Y. McComb ("Appellant")[2] appeals the trial court's judgment.
*553 At issue in this case is the application of two recent opinions from this Court concerning common law liability for co-employees: Peters v. Wady Industries, Inc. , 489 S.W.3d 784 (Mo. banc 2016), and Parr v. Breeden , 489 S.W.3d 774 (Mo. banc 2016). Because Appellant failed to establish Co-employees owed McComb a duty separate and distinct from his employer's nondelegable duty to provide a safe workplace, this Court affirms the trial court's judgment.
Background
Edward R. McComb worked as a courier for a hospital and was tasked with delivering medical supplies and other materials to clinics. He was scheduled to work on a day when a severe winter storm moved through Missouri, causing the governor to declare a state of emergency.
Before McComb's shift began, his immediate supervisor, Gregory Norfus, was informed by other employees that a severe winter storm was approaching the area. Norfus called David Cheese, who supervised both Norfus and McComb, and asked if Cheese wanted McComb to drive his route. Cheese instructed Norfus to tell McComb to go on his route, but to drive slowly and carefully. Cheese did not consult with anyone or check the weather forecast before making the decision.
During McComb's shift, Norfus called him to check on his status. McComb told Norfus the windshield of his vehicle was freezing. Norfus again contacted Cheese to ask if they should pull McComb from his route, but Cheese instructed Norfus that McComb, who was not delivering any vital organs or "STAT" items that needed immediate delivery, should continue as scheduled. Before the end of his shift, McComb's vehicle slid off the road, flipping several times down an embankment. He died as a result of the accident.
Appellant sued Co-employees for wrongful death, arguing they were negligent in sending McComb on his route and declining to pull him off his route despite the weather conditions. Co-employees moved for summary judgment and claimed the suit was barred by the exclusivity provision in Missouri's workers' compensation statutes. See sec. 287.120. The trial court granted summary judgment. Appellant appeals.[3]
Standard of Review
This Court reviews a trial court's grant of summary judgment de novo. ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp. , 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment is appropriate when the moving party has demonstrated there is no genuine dispute about material facts and the moving party is entitled to judgment as a matter of law. Rule 74.04(c)(6); ITT Commercial , 854 S.W.2d at 380.
Analysis
Appellant argues the trial court erred in granting summary judgment because there is a genuine issue of material fact. According to Appellant, whether McComb's death was attributable to his employer's nondelegable duty to provide a safe workplace is a question of fact for a jury to decide.
The workers' compensation statute applicable at the time of McComb's death provided the following exclusivity provision:
*554 1. Every employer subject to the provisions of this chapter shall be liable, irrespective of negligence, to furnish compensation under the provisions of this chapter for personal injury or death of the employee by accident arising out of and in the course of the employee's employment, and shall be released from all other liability therefor whatsoever, whether to the employee or any other person....
2. The rights and remedies herein granted to an employee shall exclude all other rights and remedies of the employee ... at common law or otherwise, on account of such accidental injury or death, except such rights and remedies as are not provided for by this chapter.
Sec. 287.120.
Pursuant to section 287.120.1, an employer was subject to liability under workers' compensation law for accidents arising out of and in the course of an employment, but employers were released from all other liability for the accident. As explained in Peters , the definition of "employer" in the statute does not include a co-employee. 489 S.W.3d at 790. Because a co-employee is not an employer under the workers' compensation law, a co-employee is not covered in the exclusivity provision. Id. As a result, section 287.120.1 does not release a co-employee from any common law liability resulting from the work-related accident. Id. Appellant is permitted to pursue common law remedies against Co-employees because the version of section 287.120.1 in effect at the time of McComb's death did not release Co-employees from common law liability.[4] See Peters , 489 S.W.3d at 790.
To establish a cause of action for common law negligence, "the plaintiff must establish that (1) the defendant had a duty to the plaintiff; (2) the defendant failed to perform that duty; and (3) the defendant's breach was the proximate cause of the plaintiff's injury." Id. at 793 (quoting Martin v. City of Washington, 848 S.W.2d 487, 493 (Mo. banc 1993) ). As this Court has repeatedly affirmed, the question of whether a duty existed between the plaintiff and defendant is purely a question of law. Peters , 489 S.W.3d at 793-94 ; Parr , 489 S.W.3d at 782.
The legal duty owed by a co-employee to a third person is separate and distinct from an employer's nondelegable duties. Peters , 489 S.W.3d at 795. If an employer's nondelegable duties owed to its employees with respect to safety are breached, an employer remains liable even though an employer assigns the performance of those duties to an employee. Id. Those nondelegable duties include the following:
1. The duty to provide a safe place to work.
2. The duty to provide safe appliances, tools, and equipment for work.
3. The duty to give warning of dangers of which the employee might reasonably be expected to remain in ignorance.
4. The duty to provide a sufficient number of suitable fellow servants.
5. The duty to promulgate and enforce rules for the conduct of employees which would make the work safe.
W. Keeton, Prosser and Keeton on the Law of Torts , sec. 80 at 569 (5th ed. 1984)
*555 (footnotes omitted); Peters , 489 S.W.3d at 784 ; Parr , 489 S.W.3d at 779.
If a co-employee has been assigned to perform nondelegable duties of the employer, such assignment exists because of the master-servant relationship and, absent the master-servant relationship, the co-employee would have no independent duty. Peters , 489 S.W.3d at 795 ; Hansen v. Ritter , 375 S.W.3d 201, 213 (Mo. App. W.D. 2012). Accordingly, an injured employee is barred from bringing common law negligence actions against a co-employee when the co-employee was performing a nondelegable duty owed by the employer. Peters , 489 S.W.3d at 796 ; Parr , 489 S.W.3d at 778. An injured employee, however, may bring a common law action for negligence against a co-employee if the injured employee can establish the co-employee owed a duty separate and distinct from the employer's nondelegable duties. Peters , 489 S.W.3d at 796 ; Parr , 489 S.W.3d at 778.
Appellant contends the trial court erred by granting summary judgment in favor of Co-employees because there are facts in controversy as to whether McComb's death was attributable to his employer's nondelegable duties. She argues this issue is a question of fact for a jury to decide. According to Appellant, Co-employees negligently performed their work and breached a separate and distinct duty from the employer's nondelegable duty if a factfinder determines they acted in contravention of the employer's inclement weather policy.[5] This misplaced argument, however, it contrary to this Court's holdings.[6]
The determination of the scope of an employer's duty is indistinguishable from the determination of the existence of a duty, which is clearly a question of law. See Peters , 489 S.W.3d at 793-94 ; Parr , 489 S.W.3d at 782 ; Hoffman v. Union Elec. Co. , 176 S.W.3d 706, 708 (Mo. 2005) ; Kibbons v. Union Elec. Co. , 823 S.W.2d 485, 489 (Mo. 1992) ; Aaron v. Havens , 758 S.W.2d 446, 447 (Mo. 1988). "The scope of the employer's duty to provide a safe workplace ... is dependent on several factors, including the nature of the employer's work and the risks associated with the work." Peters , 489 S.W.3d at 795.
The duty allegedly breached in this case is similar to the one allegedly breached in Parr . In Parr , a truck driver was involved in a fatal single-vehicle accident. 489 S.W.3d at 777. His family claimed his medical condition-including his smoking habits, obesity, severe coronary artery disease, diabetes, and probable sleep apnea -made it unsafe for him to operate as a truck driver. Id. at 777. They brought a wrongful death action against three of the driver's supervisory co-employees, claiming they had a duty to provide a safe working environment by monitoring the driver's physical condition to determine whether he was fit to drive. Id. This Court concluded as a matter of law the duties allegedly breached by the supervisory co-employees "[fell] squarely within the [employer's]
*556 duty to provide a safe workplace." Id. at 779. The trial court's grant of summary judgment in favor of the supervisory co-employees was affirmed because the driver's family failed to show the supervisory co-employees owed a duty separate and distinct from the employer's nondelegable duty to provide a safe workplace. Id. at 782.
Analogous to Appellant's argument that Co-employees owed a duty to McComb to pull him from his route when inclement weather created a danger, the plaintiffs in Parr claimed the supervisory co-employees owed a duty to the driver to not allow him to drive because of his particular health problems. As a matter of law, both duties clearly fall within an employer's nondelegable duty to provide a safe workplace. It would be illogical to say a court may determine the employer had a nondelegable duty, but then allow the jury to decide whether the co-employee's conduct fell within that duty. Both determinations are questions of law for the court.
It was an employer's nondelegable duty at common law to provide a safe workplace, "and it breaches that duty where it charged an employee with the responsibility to provide a reasonably safe work environment but the employee did not so provide." Peters , 489 S.W.3d at 800. An employer's nondelegable duty to provide a safe workplace is not unlimited, and liability will not extend to the employer for "the transitory risks which are created by the negligence of the servants themselves in carrying out the details of that work." Peters , 489 S.W.3d at 795-96 (quoting Kelso v. W. A. Ross Const. Co. , 337 Mo. 202, 85 S.W.2d 527, 535-36 (1935) ).
[W]hen an employee's injuries result from the tools furnished, the place of work, or the manner in which the work was being done, the injuries are attributable to a breach of the employer's nondelegable duty to provide a safe workplace. When, however, the employee's injuries result from a co-employee's negligence in carrying out the details of the work, the injuries are attributable to the co-employee's breach of a duty separate and distinct from the employer's nondelegable duty to provide a safe workplace.
Id. at 796.
A transitory risk created by negligent co-employees is a risk that can be considered so unforeseeable to an employer as to remove it from the employer's nondelegable duty to provide a safe workplace. See Redmond v. Quincy, O. & K.C.R. Co. , 225 Mo. 721, 126 S.W. 159, 165 (1909) ("[W]hen the master furnishes a reasonably safe place for the servant to work in, he is not liable for a transitory danger arising out of a single occurrence in which he is not at fault, and of which he has no notice or opportunity to correct."); Beasley v. Linehan Transfer Co. , 148 Mo. 413, 50 S.W. 87, 89 (1899) (an employer will be liable for risks "so liable to occur that a reasonably prudent and experienced [employer], in the business in which the defendant was engaged, would have anticipated and could have guarded against it, but failed to do so"). As a result, an employer at common law would be liable for injuries caused by a co-employee if it was reasonably foreseeable that a co-employee would create such a risk. This principle is further examined in the companion case of Conner v. Ogletree , --- S.W.3d ----, 2018 WL 1163870 (Mo. banc 2018) (No. SC95995, decided Mar. 6, 2018), handed down this same day, and the reasoning in Conner also controls the disposition of this case.[7]
*557 To explain the distinction between an employer's nondelegable duty to provide a safe workplace and a co-employee's separate and distinct duty arising from unforeseeable transitory risks created by how the co-employee carries out the details of his or her work, Peters relied on Marshall v. Kansas City , 296 S.W.2d 1 (Mo. 1956). The plaintiff in Marshall was injured when his co-employee "suddenly and unexpectedly" shook a compressor hose to remove kinks, causing the plaintiff to trip. Id. at 3. This Court concluded the co-employee was liable under common law negligence because "the place of work was not unsafe and the hazard was not brought about by the manner in which the work was being done; the danger came about by reason of the manner in which [the co-employee] handled the hose." Id.
Unlike the dangerous condition at issue in Marshall , the dangerous condition in this case-the slippery road conditions-was not created by Co-employees. Rather, the severe winter weather made McComb's workplace unsafe and Co-employees' decision to keep him on his route related to the employer's nondelegable duty to provide a safe workplace. Additionally, the risks associated with driving a delivery vehicle in a region that experiences dangerous weather conditions are reasonably foreseeable to employers. McComb's employer had a procedure of what drivers should do in bad weather, and it relied on supervisors to ensure drivers followed the procedures to provide a safe workplace. In addition, it was reasonably foreseeable that a supervisor, such as Cheese, would be negligent in directing a delivery driver, such as McComb, to remain on the road in dangerous weather conditions.[8] See Peters , 489 S.W.3d at 799 (stating "this is a classic case of a supervisory employee breaching the employer's nondelegable duty to provide a safe workplace").
Appellant has failed to demonstrate Co-employees owed McComb a duty separate and distinct from the employer's nondelegable duties. The trial court did not err by granting summary judgment.
Conclusion
The trial court's judgment in favor of Co-employees is affirmed.
Fischer, C.J., Wilson and Stith, JJ., concur;
Draper, J., dissents in separate opinion filed;
Breckenridge, J., concurs in opinion of Draper, J.
Powell, J., not participating.

All statutory citations are to RSMo Supp. 2005 unless otherwise indicated.

The original plaintiff in this case was McComb's widow, Nadine McComb. She died March 30, 2016. The McCombs' daughter, Felecia Y. McComb, filed a motion with this Court to be substituted in place of her mother as the appellant in this case, which this Court now sustains. Nadine McComb and Felecia Y. McComb are referred to as "Appellant."

This Court previously transferred the case after the court of appeals initially reversed the trial court's grant of summary judgment, but retransferred the case back to the court of appeals for reconsideration in light of Peters and Parr . On retransfer, the court of appeals again reversed the trial court's judgment. This Court has jurisdiction pursuant to article V, section 10 of the Missouri Constitution.

As explained in Peters , in 2012 the General Assembly amended section 287.120. 489 S.W.3d at 792-93. The amended statute provides immunity to co-employees except when "the employee engaged in an affirmative negligent act that purposefully and dangerously caused or increased the risk of injury." Sec. 287.120.1, RSMo Supp. 2012. Because of this change, this Court's holding, as in Peters , is limited to injuries occurring before the 2012 amendments went into effect. See 489 S.W.3d at 793.

Co-employees claim the employer did not have a separate inclement weather policy, but rather McComb's job description mentions what to do in bad weather. This disagreement is immaterial to this Court's analysis.

Appellant's argument is essentially the rationale adopted by Leeper v. Asmus , 440 S.W.3d 478 (Mo. App. W.D. 2014), which was explicitly rejected in Peters and Parr . Leeper stated, "[B]efore a court can determine whether a co-employee owes a duty in negligence at common law (a question of law), it must first be determined whether the workplace injury is attributable to the employer's breach of a nondelegable duty, a question of fact unique to the workplace." Id. at 488. This Court noted Leeper reached the wrong conclusion and overruled it "to the extent that it holds that the existence of a duty is not purely a question of law." Peters , 489 S.W.3d at 794 n.8 ; see Parr , 489 S.W.3d at 781.

Conner provides additional explanation of the historical background concerning liability between employees and employers.

The dissenting opinion asserts the following cases would have reached opposite results had those courts applied the reasoning outlined in this case and Conner , --- S.W.3d ----, 2018 WL 1163870 (Mo. banc 2018) (No. SC95995, decided Mar. 6, 2018) : Burns v. Smith , 214 S.W.3d 335 (Mo. banc 2007) ; Tauchert v. Boatmen's National Bank of St. Louis , 849 S.W.2d 573 (Mo. banc 1993) ; and Hedglin v. Stahl Specialty Co. , 903 S.W.2d 922 (Mo. App. W.D. 1995). Applying the reasoning in this case to Burns , Tauchert , and Hedglin would yield the same results because the injuries in those cases resulted from unforeseeable risks created by co-employees. Burns , 214 S.W.3d at 336 (holding a supervisor liable for injuries resulting from a water pressure tank explosion after he directed an employee to "[r]un it till it blows"); Tauchert , 849 S.W.2d at 574 (holding a supervisor liable for injuries resulting from his personal rigging of a makeshift hoist system to raise the elevator); Hedglin , 903 S.W.2d at 927 (holding a supervisor liable for injuries resulting from his directing an employee to climb to the top of a vat of scalding water and remove a grate by hanging from a forklift). Burns itself even notes the supervisor was liable because he "creat[ed] an additional danger beyond that normally faced in his job-specific environment." 214 S.W.3d at 340. Nothing in this opinion is inconsistent with the outcomes in these previous cases.