

# In the
# Missouri Court of Appeals
# Western District

SARAH CHANNEL, LAUREN
CHANNEL, MARY CHANNEL,

Appellants,

v.

STEPHEN WALKER, INDIVIDUALLY,

Respondent.

WD85172

OPINION FILED:

SEPTEMBER 27, 2022

**Appeal from the Circuit Court of Vernon County, Missouri**
**The Honorable David Reid Munton, Judge**

**Before Division Four: Gary D. Witt, Chief Judge, Presiding, Anthony Rex Gabbert, Judge,**
**Jeffrey C. Keal, Special Judge**

Sarah Channel, Lauren Channel, and Mary Channel ("Appellants" collectively) appeal the

circuit court's Judgment granting Stephen Walker's motion for summary judgment on the

Appellants' "Second Amended Petition in Damages for Wrongful Death" which alleged that

Walker, among others, placed Thomas Channel at risk for injury not normally associated with his

job, and as a direct and proximate result of Walker's intentional and negligent acts, Channel was

caused to suffer an untimely and agonizing death. Appellants contend that the circuit court erred

in granting summary judgment to Walker, arguing that where a transitory risk is created by the

negligence of a co-employee in carrying out the details of their work, the co-employee breaches

an independent duty of care that is separate and distinct from the employer's nondelegable duty to provide a safe workspace, allowing for a suit in common law to recover damages where the co-employee injures a fellow employee. We affirm.

## Background and Procedural Information

### The Petition

On July 30, 2014, the Appellants filed "Plaintiff's Second Amended Petition in Damages for Wrongful Death" against Walker and additional defendants. All other defendants, including Channel's employer, Cintas Corporation in Webb City, Missouri ("Cintas"), were later dismissed from the suit.

The Appellants alleged that the incidents described in the petition occurred throughout Channel's employment at Cintas, and that Walker and Channel were co-employees of Cintas. Further, that at all times relevant to the Appellants' action, Walker was an employee of Cintas and acting within the course and scope of his employment with Cintas. Walker was Channel's boss, and as general manager had complete control of the daily operations of Cintas.

Appellants alleged that Cintas implemented "Heat Stress Safety Training" that required supervisors to follow a heat stress protocol for any employee reports of heat stress, which included heat stress abatement and/or medical intervention. On or about August 2, 2011, Channel was employed as a route delivery driver for Cintas. Channel drove a Cintas truck at the direction of Walker and other supervisors/co-employees. The truck driven by Channel was one of only two trucks of the Webb City Cintas fleet's fourteen trucks that did not have a properly working air conditioning unit. Channel was the oldest driver at the Webb City location. Prior to August 2, 2011, Walker allegedly told others that he intended to terminate and get rid of Channel. Walker and other supervisors/co-employees of Channel assigned Channel to the second longest route at

2

the Webb City Cintas location. This was with knowledge that Channel's truck did not have a properly working air conditioning unit installed.

Appellants alleged that, prior to his death, Channel approached Walker and other supervisors/co-employees on multiple occasions with reports that he was becoming ill from the extreme summer heat. Despite Channel's repeated notice and pleas regarding heat stress, Walker and other supervisors/co-employees failed to follow the Cintas heat stress protocol, allegedly placing Channel at risk for an injury not normally associated with the job. Walker and others additionally took affirmative acts of instructing Channel to continue being exposed to the heat, even after receiving notice of the danger it posed to his health.

On August 2, 2011, at approximately 1:30 p.m., Channel made a scheduled delivery stop at O'Reilly Auto Parts in Nevada, Missouri. The outside temperature at that time was 106 degrees. After signing for the delivery, Channel returned to his truck in the parking lot where he succumbed to a heat stroke and died. At approximately 4:50 p.m., a supervisor of Channel called a neighboring business to see if Channel was still in the vicinity of O'Reilly Auto Parts. An employee from that business went to Channel's truck which was parked in the lot adjacent to the building. Upon approaching the truck, Channel was found in the back and appeared to be deceased; emergency services were called to the scene, and upon arrival determined that Channel was deceased. The temperature inside Channel's truck was too high for an emergency personnel's thermometer to read.

An autopsy performed on Channel determined his cause of death to be Hypernatremic Dehydration, caused by a thrombosis forming in his coronary artery precipitated by heat, stress, and dehydration, which led to cardiac arrhythmia and death. Appellants alleged that, as a direct

and proximate result of Walker's intentional and negligent acts, Channel was caused to suffer an untimely and agonizing death.

Appellants further alleged that Walker, while acting within the course and scope of his agency and/or employment with Cintas, owed Channel a common law independent legal duty to refrain from negligently, intentionally, and/or recklessly failing to perform his job tasks in a manner that could cause a risk of injury to a co-employee that is not a normal risk of injury typically associated with the job. Appellants alleged that Walker's conduct fell below the applicable standard of care and was intentional, reckless, or negligent in that he, a) intentionally and recklessly failed to initiate the Cintas heat stress protocol for Channel; b) intentionally and recklessly required Channel to return to his job duties with knowledge that the risk of heat stroke is not a normal risk of injury typically associated with the job if proper Cintas heat stress protocol is followed; c) intentionally and recklessly failed to properly address the health concerns of Channel; d) intentionally and recklessly assigned Channel to the longest route without having an air conditioning unit installed in the truck; e) intentionally and recklessly failed to have an air conditioning unit installed in Channel's truck; f) intentionally and recklessly failed to take adequate measures to warn Channel of the signs and dangers of a heat stroke and dehydration; g) intentionally and recklessly failed to take adequate measures to ensure Channel would not suffer from a heat stroke and dehydration; h) intentionally and recklessly ignored Channel's requests for an air conditioning unit for his truck; i) intentionally and recklessly ignored Channel's statements that the heat was making him ill; j) intentionally and recklessly attempted to make Channel quit his job; k) intentionally and recklessly attempted to injure Channel to the point he could no longer work, and; l) intentionally and recklessly caused injury and death to Channel without justification.

4

Appellants alleged that Walker's negligent actions toward Channel showed "something more" than negligence and a careless and reckless disregard for the safety of his co-employee. Further, that as a direct and proximate result of the "negligence, carelessness, faults and omissions" of Walker, Channel was caused to suffer physical, mental and emotional pain, anguish and suffering prior to his death. Further, that the Appellants suffered loss as a result of Channel's death.

Walker's answer denied the allegations in Channel's petition which implicated Walker in Channel's death and which claimed that Walker engaged in wrongdoing. Walker set forth twenty-one affirmative defenses, including that he was entitled to immunity in that the Appellants' claims against him were barred by the exclusive remedy provisions of the Missouri Workers' Compensation Act. Further, that Walker did not owe a personal duty of care to Channel, did not violate a personal duty of care to Channel, and did not engage in an affirmative negligent act independent of the employer's non-delegable duties to provide a safe work environment for its employees.

<u>Workers' Compensation Litigation</u>

On November 17, 2015, the defendants in the case filed a Motion for Summary Judgment on the basis that the Missouri Workers' Compensation Law provided the exclusive remedy for the Appellants' claims against Cintas, and that the Appellants had failed to demonstrate that Walker and other co-employees breached an independent duty to Channel that was separate and distinct from his employer's non-delegable duties. On March 15, 2016, the circuit court entered an order granting all defendants' motions for summary judgment, and entered final judgment on April 7, 2016. Therein the court concluded that Channel's death was an accident under Workers' Compensation case law, and as such, the Workers' Compensation Act was the exclusive remedy as to any claims against Cintas. Further, as relevant to Walker, that Walker did not breach any

5

independent duty owed to Channel and that his actions were within his job descriptions for Cintas stating, "If decedent's death was the result of an unsafe work environment, that would be an employer's non-delegable duty."

The Appellants appealed the judgment, and on March 28, 2017, this court reversed, holding that the circuit court lacked authority to decide whether Channel's death was accidental or intentional because that authority lies exclusively with the Labor and Industrial Relations Commission. *Channel v. Cintas Corporation No. 2*, 518 S.W.3d 824, 827 (Mo. App. 2017). At the time of the circuit court's judgment, a workers' compensation claim was pending, and throughout the summary judgment and appellate proceedings, the Appellants continued to pursue their Claim for Compensation seeking death benefits, filed on or about June 11, 2015, with the Division of Workers' Compensation. *Id*.

On September 4, 2019, an Administrative Law Judge with the Division of Workers' Compensation issued an award finding that Channel's death was an accident arising out of his employment and awarded burial expenses. *Channel v. Cintas Corp.*, 617 S.W.3d 884, 885 (Mo. App. 2021). The judge additionally found that the Appellants had not established that they were dependents entitled to weekly death benefit payments. *Id.* The Appellants filed an application for review with the Labor and Industrial Relations Commission, which was dismissed May 27, 2020. *Id*. The Appellants appealed the Commission's ruling, and on March 2, 2021, this court affirmed the dismissal. *Id*.

Walker's Motion for Summary Judgment on Appellants' Claims Against Walker

On June 11, 2021, Walker again moved for summary judgment on the Appellants' claims against him, arguing that he was entitled to judgment as a matter of law because he did not violate a personal duty of care owed to Channel that was separate and distinct from the employer's non-

6

delegable duty to provide a safe workplace. Material facts that Walker presented to support his motion, and that were admitted by the Appellants, included that Channel's death was the result of an "'accident' as defined in Chapter 287, R.S.Mo., in particular the strain of significant heat.";  Channel "sustained an 'injury' as defined in Chapter 287, R.S.Mo., in particular an acute myocardial infarction that was fatal.";  Channel's "work with Cintas, in particular his exposure to extreme heat and dehydration from his work conditions, was the prevailing factor that caused his fatal myocardial infarction and death;" and Channel's death was caused by a hazard or risk related to his employment "to which he would not have been equally exposed outside of and unrelated to his employment with Cintas in his normal nonemployment life, in particular his activity of driving his truck on a very hot day, while making frequent stops, pickups, and deliveries."  The parties agreed that Channel's "death was not caused by an intentional act of Cintas or Walker," and that Channel's death "was the result of risks associated with his work with Cintas, the place of his work, and the manner in which his work was done, namely exposure to extreme heat and dehydration while performing deliveries."  The Appellants disagreed with Walker's statement that Channel's death was "not the result of any conduct of Walker separate and distinct from the performance of his job duties with Cintas," and instead contended that "Walker's actions of negligence were malfeasance in that the sole purpose of those actions was to make decedent quit his job and that type of outrageous conduct was not reasonably foreseeable to Employer Cintas."

The parties agreed that the Administrative Law Judge with the Division of Workers' Compensation held that,

    a.  The entirety of the medical evidence and the weight of the credible factual evidence lead to a conclusion of an accident compensable under Chapter 287.

7

b.  All of the evidence uniformly establishes that: (1) there was an accident – the strain of significant heat on Tom Channel; (2) there was an injury – an acute myocardial infarction that was fatal; and (3) the heat and dehydration from Channel's work condition were the prevailing factor in causing the fatal heart attack.

c.  The evidence can only be interpreted to support that Channel's death arose out of and in the course of his employment.

d.  Channel's particular risk source and exposure was his activity of driving his truck on a very hot day, while making frequent stops and pickups/deliveries, and the evidence can only be interpreted to support that Channel's death arose out of and in the course of his employment.

e.  The weight of the evidence does not support that Channel's death was caused by an intentional act.

f.  Channel died as a result of an accident as that term is defined in Chapter 287. RSMo, not due to an intentional act by the employer.  Therefore, the claim for benefits falls within the exclusive jurisdiction of the Division of Workers' Compensation.  Channel's demise on August 2, 2011, was an injury/death by accident which arose out of and in the course of his employment for Cintas.  Further, Channel's work/work activity was the prevailing factor in leading to his death.

In response to Walker's motion for summary judgment, the Appellants presented a Statement of Additional Uncontroverted Material Facts, the majority of which Walker objected to on the grounds that they represented evidentiary facts and not material facts, or denied on other grounds.  These included that,

a. Employees of Cintas observed that Channel's death was kept "hush, hush," employees felt pressured not to speak of it, and most employees sympathetic to Channel left citing a difficult work environment. (Objected to and denied by Walker).

b. Channel reported his heat-related sickness/symptoms to his supervisor and was told to "Suck it up old man and deal with it." Channel also reported his heat-related sickness to Tim Simon. (Objected to and denied by Walker).

c. A replacement truck was supposedly ordered for Channel, one equipped with air conditioning, and was supposed to have arrived months before but was only delivered after Channel died. (Objected to and denied by Walker).

d. Walker stated to a co-worker that he wanted to replace certain employees, including Channel. (Objected to and denied by Walker).

e. Walker discussed how Corporate America killed Channel, which was understood to mean that productivity was placed before safety. (Objected to and denied by Walker).

f. Travis Daggett left Channel a voicemail offering his air-conditioned truck to Channel the day of his death, and sought permission to do so from Tim Simon prior to offering. (Objected to and without waiving objections, admitted by Walker).

Walker asserted additional purported uncontroverted material facts in reply to the Appellants' statement of uncontroverted material facts, and included additional purported material facts, all of which the Appellants subsequently denied in their sur-reply.

The Circuit Court's Judgment Granting Walker's Motion for Summary Judgment

On January 3, 2022, the circuit court entered its "Judgment on Defendant Stephen Walker's Motion for Summary Judgment," therein granting Walker's motion. The court concluded that Walker's actions were within his job descriptions with his employer, and that Walker did not breach

9

any independent duty owed Channel. The court found that the Appellants had not shown a genuine issue of material fact as to whether Walker breached any duty owed Channel independent of Cintas' non-delegable duties as an employer.

This appeal follows.

### Point on Appeal

In their sole point on appeal, the Appellants contend that the circuit court erred in granting summary judgment to Walker, arguing that where a transitory risk is created by the negligence of a co-employee in carrying out the details of their work, the co-employee breaches an independent duty of care that is separate and distinct from the employer's nondelegable duty to provide a safe workspace. Consequently, a suit in common law by an injured employee to recover damages is warranted in such circumstances, and by negligently carrying out the details of his work, Walker created a transitory risk by intentionally exposing Channel "to injury with the purpose and intent of forcing [Channel] to quit his job and in violation of workplace policy, resulting in decedent Channel's untimely death."

The standard of review for a preserved appeal challenging the grant of a motion for summary judgment is *de novo*. *ITT Com. Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). In such cases, we do not defer to the trial court's decision, but instead use the same criteria that the trial court should have employed in initially deciding whether to grant the motion. *Barekman v. City of Republic*, 232 S.W.3d 675, 677 (Mo. App. 2007) (internal citations omitted). We review the record in the light most favorable to the party against whom judgment was entered, and accord that party the benefit of all inferences which may reasonably be drawn from the record. *Id.* Summary judgment is appropriate where the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law.

*ITT Com. Fin. Corp.*, 854 S.W.2d at 376. "Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion." *Id.*

> A 'defending party' may establish a right to summary judgment by showing: (1) facts negating any one of the claimant's elements; (2) that the party opposing the motion has presented insufficient evidence to allow the finding of the existence of any one of the claimant's elements; or (3) that there is no genuine dispute as to the existence of each of the facts necessary to support a properly pleaded affirmative defense.

*Ameristar Jet Charter, Inc. v. Dodson Intern. Parts, Inc.*, 155 S.W.3d 50, 58-59 (Mo. banc 2005).

"To establish a cause of action for common law negligence, the plaintiff must establish that (1) the defendant had a duty to the plaintiff; (2) the defendant failed to perform that duty; and (3) the defendant's breach was the proximate cause of the plaintiff's injury." *McComb v. Norfus*, 541 S.W.3d 550, 554 (Mo. banc 2018) (internal quotation marks and citations omitted).[1] "The question of whether a duty existed between the plaintiff and defendant is purely a question of law." *Id.*

> The legal duty owed by a co-employee to a third person is separate and distinct from an employer's nondelegable duties. If an employer's nondelegable duties owed to its employees with respect to safety are breached, an employer remains liable *even though an employer assigns the performance of those duties to an employee.* Those nondelegable duties include the following:
>
> 1.  The duty to provide a safe place to work.
>
> 2.  The duty to provide safe appliances, tools, and equipment for work.
>
> 3.  The duty to give warning of dangers of which the employee might reasonably be expected to remain in ignorance.
>
> 4.  The duty to provide a sufficient number of suitable fellow servants.

---

[1] Channel's death occurred in 2011. Although the law has since changed, between 2005 to 2012 and under certain circumstances, Missouri's workers' compensation statutes permitted a plaintiff to pursue a negligence action against a co-employee for an injury sustained in the course of work. *Conner v. Ogletree*, 542 S.W.3d 315, 319, 321 (Mo. banc 2018).

> 5. The duty to promulgate and enforce rules for the conduct of employees which would make the work safe.
>
> If a co-employee has been assigned to perform nondelegable duties of the employer, such assignment exists because of the master-servant relationship and, absent the master-servant relationship, the co-employee would have no independent duty. Accordingly, an injured employee is barred from bringing common law negligence actions against a co-employee when the co-employee was performing a nondelegable duty owed by the employer. An injured employee, however, may bring a common law action for negligence against a co-employee if the injured employee can establish the co-employee owed a duty separate and distinct from the employer's nondelegable duties.

*Id.* at 554-555 (emphasis original; internal quotation marks and citations omitted). "The scope of the employer's nondelegable duty is broad." *Conner v. Ogletree*, 542 S.W.3d 315, 322 (Mo. banc 2018). "It is the duty of the master to exercise reasonable care, commensurate with the nature of the business, to protect his servant from the hazards incident to it." *Id.* (internal quotation marks and citation omitted.) "An employer's nondelegable duty to provide a safe workplace is not unlimited, and liability will not extend to the employer for the transitory risks which are created by the negligence of servants themselves in carrying out the details of that work." *McComb*, 541 S.W.3d at 556 (internal quotation marks and citations omitted). "A transitory risk created by negligent co-employees is a risk that can be considered so unforeseeable to an employer as to remove it from the employer's nondelegable duty to provide a safe workplace." *Id*.

> When an employee's injuries result from the tools furnished, the place of work, or the manner in which the work was being done, the injuries are attributable to a breach of the employer's nondelegable duty to provide a safe workplace. When, however, the employee's injuries result from a co-employee's negligence in carrying out the details of the work, the injuries are attributable to the co-employee's breach of a duty separate and distinct from the employer's nondelegable duty to provide a safe workplace.

*Id.* (internal quotation marks and citation omitted). An unforeseeable transitory risk has been described by the Missouri Supreme Court as including situations where the place of work was not

12

unsafe, and the hazard was not brought about by the manner in which the work was being done. *Id.* at 557. In determining whether a co-employee can be liable for an employee's injury under the common law, the co-employee's negligence is assumed. *Conner v. Ogletree* 542 S.W.3d 315, 324 (Mo. banc 2018). What matters is whether the duty the co-employee breached was part of the employer's duty to protect employees from reasonably foreseeable risks in the workplace. *Id.* "If so, the claim is barred." *Id.*

In *McComb v. Norfus*, a deceased employee's spouse brought a wrongful death action against the employee's supervisors after the vehicle the employee was driving as a courier slid off the road during a winter storm, resulting in his death. 541 S.W.3d at 553. The spouse alleged that the supervisors were negligent in sending the employee on the delivery route, and declining to take him off the route despite hazardous road conditions. *Id.* Before the employee's shift, his immediate supervisor was aware that a severe winter storm was approaching the area. *Id.* The immediate supervisor consulted his own supervisor, who, without consulting anyone or checking the weather forecast, instructed the employee to be sent out, but that he should drive slowly and carefully. *Id.* During the employee's shift, his immediate supervisor contacted him to check on his status, and was advised that the windshield of the employee's vehicle was freezing. *Id.* The immediate supervisor again consulted his supervisor who advised that, although there were no items in need of immediate delivery, the employee should continue as scheduled. *Id.* Before the end of the shift, the employee's vehicle slid off the road, flipping several times and down an embankment, and the employee died as a result of the accident. *Id.*

The Missouri Supreme Court concluded that the plaintiff failed to demonstrate that the co-employees owed a duty to the employee separate and distinct from the employer's nondelegable duties. *Id.* at 557. The Court noted that the dangerous condition – the slippery road conditions –

13

was not created by the co-employees. *Id*. "Rather, the severe winter weather made [the employee's] workplace unsafe and Co-employees' decision to keep him on his route related to the employer's nondelegable duty to provide a safe workplace." *Id*. Further, "the risks associated with driving a delivery vehicle in a region that experiences dangerous weather conditions are reasonably foreseeable to employers." *Id*. The Court discussed that the employer had a procedure for how drivers were to respond to bad weather, and relied on supervisors to ensure drivers followed the procedures to provide a safe workplace. *Id*. Additionally, the Court noted that "it was reasonably foreseeable that a supervisor … would be negligent in directing a delivery driver … to remain on the road in dangerous weather conditions." *Id*.

We find that the facts of *McComb* closely parallel the case before us. Here, the Appellants argue that Cintas established a safe working environment through rules, policies and training to address and prevent heat stress, but that Walker intentionally violated the rules in carrying out the details of his work and to force Channel to quit his job. Yet, it is uncontroverted that Channel's "work with Cintas, in particular his exposure to extreme heat and dehydration from his work conditions, was the prevailing factor that caused his fatal myocardial infarction and death." As in *McComb*, the extreme heat conditions were not caused by co-employee Walker. *See McComb*, 541 S.W.3d at 557. It was the severe summer weather that made Channel's workplace unsafe. *See Id*. The risks associated with driving a delivery vehicle without an air conditioning unit in a region that experiences extremely hot weather conditions were reasonably foreseeable to Cintas. *See Id*. Cintas, in fact, understood the dangers as evidenced by its implementation of a heat stress protocol plan that was to be followed by employees. Walker's decision to keep Channel on his route despite the heat can be attributed to the employer's nondelegable duty to provide a safe workplace. *See*

14

*Id.* As in *McComb*, Walker's alleged failure to follow the company heat stress protocol was reasonably foreseeable to the employer.

Moreover, the allegations that Walker, 1) failed to initiate Cintas' heat stress protocol for Channel, 2) required Channel to return to his job duties, 3) failed to address Channel's health concerns, 4) assigned Channel to the longest route without having an air conditioning unit installed in Channel's truck, 5) failed to install an air conditioning unit in Channel's truck, 6) failed to warn Channel of the signs and dangers of a heat stroke and dehydration, 7) failed to ensure Channel would not suffer from heat stroke and dehydration, and 8) ignored requests for an air conditioning unit for Channel's truck, are all encompassed within the employer's nondelegable duties to provide a safe workplace, provide safe equipment for work, give warning of dangers, and enforce rules for the conduct of employees. Consequently, these alleged actions and/or inactions of Walker cannot be deemed transitory risks for which a co-employee might be liable under the common law.

The remaining allegations in the Appellants' petition that the Appellants contend represent acts by Walker which are outside of the employer's nondelegable duty to provide a safe workplace include that Walker, 1) intentionally and recklessly attempted to make Channel quit his job, 2) intentionally and recklessly attempted to injure Channel to the point he could no longer work, and 3) intentionally and recklessly caused injury and death to Channel without justification. Yet, the Appellants agreed in the summary judgment proceedings that Channel's "death was not caused by an intentional act of Cintas or Walker." The Appellants further agreed that Channel's death "was the result of risks associated with his work with Cintas, the place of his work, and the manner in which his work was done, namely exposure to extreme heat and dehydration while performing deliveries." While the Appellants still contended that "Walker's actions of negligence were malfeasance in that the sole purpose of those actions was to make decedent quit his job and that

15

type of outrageous conduct was not reasonably foreseeable to Employer Cintas," the summary judgment record does not support this claim. First, it is difficult to reconcile the Appellant's admissions that Channel's death was not caused by any intentional act of Walker and was essentially the result of a hazardous work environment, with the allegation that Walker engaged in purposeful acts to force Channel to quit his job, with those purposeful acts leading to Channel's death. Nevertheless, the actions and/or inactions by Walker that the Appellants contend were designed by Walker to force Channel to quit his job all fall within the employer's nondelegable duties as described above.

Appellants allege in their petition that Walker and other supervisors/co-employees of Channel assigned Channel to the second longest route with knowledge that he had no air conditioning unit in his truck, and Walker's deposition testimony was that three supervisors, including Walker, made decisions with regard to the specific personnel that covered specific routes. Hence, the record reflects that the decision to place Channel on that particular route, under those specific conditions, was a decision Cintas delegated to management. It was not unforeseeable to Cintas that Channel would be assigned to that particular route.[2] Further, nothing in the record supports that Cintas was unaware that some company trucks were without air conditioning units. The Appellants themselves allege that a replacement truck with an air conditioning unit was on order for Channel, although not delivered until after his death. There is no allegation that Walker somehow prevented delivery of Channel's replacement truck. Channel was not the only driver

_____

[2] The Appellants denied Walker's alleged fact that, "At his own request, Decedent was moved from the Neosho route to the route running between Webb City, Missouri, and Nevada, Missouri, which he was driving at the time of his death," responding that, "Tom Channel was assigned to the Nevada dust route by Defendant Walker." The only exhibit that the Appellants provided directly related to this contention was an excerpt from Walker's deposition testimony wherein Walker testified that he and two other supervisors made that decision. Timothy Simon testified that when the Nevada route came open, Channel called Simon to inquire if the Nevada route would be a better opportunity for him.

16

without an air conditioning unit in his truck. On the day of Channel's death, a fellow employee advised a supervisor, Tim Simon, that he "was going to ask Todd or Tom if they wanted – if it was okay if they could use my truck since, you know, it had been so hot."[3]

The summary judgment record simply does not support the Appellants' contention that the sole purpose of Walker's actions was to force Channel to quit his job, or that the actions Walker took and/or failed to take with regard to Channel's route and/or delivery truck and/or weather-related decisions were unforeseeable by Cintas. The Appellants, therefore, have failed to show that Walker's actions/inactions represented a transitory risk such that Walker breached an independent duty of care that was separate and distinct from the employer's nondelegable duty to provide a safe workplace.

Appellants' point on appeal is denied.

### Conclusion

The circuit court did not err in granting summary judgment to Walker, as the summary judgment record shows that the actions and/or inactions taken by Channel's co-employee Walker did not represent a transitory risk such that Walker breached an independent duty of care that was separate and distinct from the employer's nondelegable duty to provide a safe workplace.

The circuit court's judgment is affirmed.

_____
Anthony Rex Gabbert, Judge

All concur.

---

[3] There is no allegation that "Todd" was also being targeted by Walker for dismissal. Although an employee of Cintas testified that, prior to taking over as manager, Walker had stated that he wanted to get rid of certain employees, including Marsha Spires, Barb Thorn, and Tom Channel, the record shows that the conditions that the Appellants allege that Walker subjected Channel to in an attempt to cause him to quit were experienced by other employees that were not Spires or Thorn.